63   187<br>73     3

## E. C. BELL ET AL. *v.* H. D. McKINNEY.

1. CONSTITUTIONAL LAW. *Power of legislature to confer criminal jurisdiction upon mayors.*

Under art. 1, § 31, and art. 6, § 24, of the constitution, which provide that the legislature may establish, in addition to the courts designated in the constitution, "other inferior courts," and in cases of the misdemeanors therein enumerated may dispense with the inquest of a grand jury and "authorize prosecutions before justices of the peace or such other inferior courts" as may be so established, it is competent for the legislature to invest the mayor of an incorporated town with the criminal jurisdiction of a justice of the peace, or to declare that the mayor of such town shall be *ex officio* a justice of the peace in the corporate limits of the town in which he may be elected.

2. MAYOR. *Criminal jurisdiction of. Act of 1876 construed.*

Under the act of 1876 (Acts of 1876, p. 33), which provides "that the mayors of all incorporated towns in this State shall be *ex officio* justices of the peace in and for the several counties in which their respective towns are situated," a mayor has no final criminal jurisdiction as a justice of the peace, except as to crimes committed within the corporate limits of the town; and as to crimes committed outside of the corporate limits, he can only act as a conservator of the peace and bind the offender over to await the action of the grand jury.

3. SAME. *Liability of, for errors.*

A mayor and *ex officio* justice of the peace, who, having jurisdiction over the subject-matter of a criminal charge, errs in the judgment rendered against the defendant as to the character and extent of his jurisdiction, will not be held liable in damages to the defendant if he acted in good faith.

APPEAL from the Circuit Court of Lee County.

HON. J. W. BUCHANAN, Judge.

The town of Chesterville, as incorporated under a special act of the legislature, lies partly in the County of Lee and partly in the County of Pontotoc. The third section of its charter provides "that the mayor of said town of Chesterville shall, by virtue of his office, be justice of the peace and shall have the same powers and jurisdiction as other justices of the peace in this State." W. H. Wagoner, who resides in that part of the town lying in Pontotoc County, was duly elected mayor. E. C. Bell appeared be-, fore him and made an affidavit against H. D. McKinney for trespassing upon the land of Bell, which land is situated in Lee County and outside of the corporate limits of Chesterville. The town marshal arrested McKinney, brought him before the mayor, and he was convicted and fined. On default in the payment of the fine he was sent to the county jail. McKinney appealed to the circuit court and was released because the conviction was illegal from want of jurisdiction in the mayor of Chesterville.

McKinney brought an action of trespass *vi et armis* for false imprisonment against E. C. Bell, W. H. Wagoner, and G. K. Strain, the city marshal, and recovered judgment for one hundred and fifty dollars. The defendants appealed.

*J. H. Barr,* for the appellants.

1. The jurisdiction of justice of the peace is conferred upon Wagoner, or the mayors of Chesterville, by virtue of their office, by the charter of Chesterville itself. See 3d clause of charter. The same powers as constable are conferred also upon Strain, or the constable of Chesterville, by the 6th clause of said charter.

It is said, and I care not to controvert it, that these clauses of. the charter only confer such jurisdiction within the limits of the corporation. Yet by a general act of the legislature, passed in 1876, the mayors or marshals, etc., of all incorporated towns within the State are vested, *ex officio,* with all the powers of justice of the peace, and " made justices and constables *in* and *for* the *several counties* of this State, in *which their respective towns are*

*situated;*" and it provides further, that they shall execute bonds, as required by law, by such officers.    Sheet Acts 1876, p. 33.

This act is still in force, and has not been repealed by the Code of 1880, or *any* subsequent act.

2. This question as to the constitutional power of the legislature to confer upon mayors such jurisdiction has been settled by this court in favor of that power.    *Montross* v. *State*, 61 Miss. 429.

Furthermore, the courts will not hold a statute unconstitutional unless its repugnance to the constitution is clear and not doubtful. *Burnham* v. *Sumner*, 50 Miss. 520 ; *Gibbs* v. *Green*, 54 Miss. 593.

3. It cannot be doubted, and is not denied, that Wagoner did have the general jurisdiction of justices of the peace. over crimes and misdemeanors within the corporate limits of the town of Chesterville.    This being true, he had jurisdiction over the *subject-matter* of the misdemeanor-trespass preferred by Bell against Mc-Kinney.    And having this jurisdiction, neither Bell, nor either of the appellants, are liable as trespassers, unless *Bell* acted *maliciously* and the officers corruptly ; and this is so, whether the magistrate had jurisdiction of the *person* or *locality* of the crime or not.    *West* v. *Smallwood*, Bigelow's Leading Cases on Torts 239, 240 ; also see pages 279 and 280 (opinion of Lord Abinger) ; 7 Ohio N. S. 50 and 51 (above referred to) ; *Trammell* v. *Town of Russell-ville*, 36 Am. Rep. 1.

4. But if the magistrate has jurisdiction over the *subject-matter*, as did Wagoner in this suit, then the party who set in motion the proceedings for the arrest would not be liable, even if it was a civil suit in his own behalf on which the arrest was made.    Jurisdiction of the *subject-matter* of an action is a power to adjudge concerning the general question therein, and is not dependent upon the state of facts which may appear in a case.

In the criminal charge preferred by Bell, the subject-matter was the trespass or misdemeanor charged, and having jurisdiction over that, neither of appellants were trespassers, even if the magistrate had no jurisdiction of the " locality of the crime or of the person." 36 Am. Reps. 4, *supra*.

*J. H. Barr* also made an oral argument.

*W. L. Clayton* and *F. M. Goar*, for the appellee.

1. *As justice of the peace,* Wagoner had not and could not have any legal authority in Lee County. As mayor, he might, of course, exercise authority in Lee County within the corporate limits of his town. His was a court—a mayor's court—and may be provided for under the twenty-fourth section of article 6 of our constitution.

All the laws, charter of Chesterville, § 3, and Act of 1876, 33, only intended to confer authority on the mayors to act as justices of the peace within the limits of their respective corporations.

2. All acts of the legislature, both general and special, providing for mayors being *ex officio* justices of the peace are absolutely void as to all territory, unless elected by the qualified electors of the districts over which they are to exercise jurisdiction or authority, and for the term of two years, the terms to begin at the time provided by the constitution. As to the town of Chesterville, we confidently assert that no act making the mayor *ex officio* justice of the peace is valid. If not, or if his authority is only good as to the county of his residence—Pontotoc—or within the corporate limits of the town, he had no jurisdiction over the person or subject-matter in this case, and hence, had no authority to issue the warrant and try the plaintiff on a charge alleged to have been committed without the limits of the town of Chesterville.

3. If the defendant, Wagoner, had no authority to issue the warrant, then all who assisted or procured the arrest in any way are liable. In other words, if a court has *no jurisdiction,* all parties instrumental in procuring arrest are liable. 3 Waite's Actions and Defenses 307, § 4; 2 Hill. on Torts 179; 61 Miss. 310.

ARNOLD, J., delivered the opinion of the court.

Under article 1, § 31, and article 6, § 24, of the constitution, which provide that the legislature may establish in addition to the courts designated in the constitution other inferior courts, and in cases of the misdemeanors therein enumerated may dispense with the inquest of a grand jury and authorize prosecutions before justices of the peace or such other inferior courts as may be so

established, it is competent for the legislature to invest the mayor of an incorporated town with the criminal jurisdiction of a justice of the peace, or to declare that the mayor of such town shall be *ex officio* a justice of the peace in the corporate limits of the town in which he was elected.     A mayor's court thus constituted would be an inferior court within the meaning of the constitutional provisions above referred to.     1 Dill on Mun. Corp., § 427, and authorities; *Gray* v. *State*, 2 Harrington 76; *Hutchens* v. *Scott et al.*, 4 Halstead 218; *The State* v. *Halfrid*, 2 Nott & McCord 233.

But neither the charter of Chesterville nor the act of 1876 conferred upon the mayor of that town the final criminal jurisdiction of a justice of the peace, except as to offenses committed within the corporate limits of the town.     It is true that the act of 1876 was not repealed by the Code of 1880, but that act did not clothe the mayor of Chesterville with authority to try and punish offenders as a justice of the peace co-extensive with the limits of the two counties in which the town was partly located.     No such result was contemplated by the legislature.     The generality of the language employed in the statute must be restrained by construction so as to confine its operation within the constitutional power of the legislature.     The effect of the act, as far as the grant of criminal jurisdiction is concerned, was to confer upon the mayors of incorporated towns the final criminal jurisdiction of justices of the peace as to offenses committed in such towns, and to render them conservators of the peace for the counties in which their respective towns were situated.     The corporate limits of the towns in which such mayors were elected were to be their districts, and as to offenses within the cognizance of justices of the peace, committed in such districts, they might try and punish offenses when convicted in the same manner that justices of the peace in other districts might do so, but as to all other offenders they could only act as conservators of the peace in and for the counties in which their respective towns were located.

The claim of appellee for damages is based on the theory that the mayor and *ex officio* justice of the peace of Chesterville had no jurisdiction in the premises.     Affidavit and warrant were duly

made and issued for the arrest and imprisonment of which appellee complains. The offense charged was one within the jurisdiction of justices of the peace, but it does not appear to have been committed in the corporate limits of Chesterville. It was error for Wagoner, the mayor and *ex officio* justice of the peace, to have sentenced appellee to pay a fine or in default thereof to be committed to jail. The extent of his authority was to have required appellee to give bond or recognizance to appear at the circuit court. But as he had jurisdiction as a conservator of the peace of the offense charged and acted in good faith, he is not liable under these circumstances for errors of judgment or mistakes of law committed in the execution of his office. *Little* v. *Moore,* 7 Am. Dec. 574; *Gregory* v. *Brown,* Ib. 731; *Reid* v. *Hood,* 10 Ib. 582; *Wilcox* v. *Williamson,* 61 Miss. 310; 1 Blackstone Com. 354; 3 Waite's Actions and Defenses 316 and 317; *McCall* v. *Cohen,* 42 Am. Reps. 641; *Mills* v. *Collett,* 6 Bing., 19 C. L. R. 11; *Busteed* v. *Parsons,* 25 Am. Dec. 688 and notes. The record shows no cause of action against either of the appellants.

*Reversed.*