POPLARVILLE SAWMILL CO. *v.* A MARX & SON.

[77 South. 815, In Banc.]

CONSTITUTIONAL LAWS. *Justice of the peace. Distribution of powers. Mayor as ex officio justice of the peace.*

Section 3399, Code 1906, making the mayor of a town an *ex officio* justice of the peace, is not in violation of section 2 of the Constitution of 1890, prohibiting members of one department of government from exercising the powers of another department.

APPEAL from the chancery court of Pearl River county. HON. D. M. RUSSELL, Chancellor.

Injunction by the Poplarville Sawmill Company against A. Marx & Sons. From a decree sustaining a demurrer to the bill and awarding damages, complainants appeal.

The facts are fully stated in the opinion of the court.

*J. M. Shivers,* for appellant.

The question is, has the mayor of a town the right to try civil actions in his capacity as a justice of the peace within the corporate limits of his municipality. S. C. Smith was the duly elected and qualified mayor of the town of Poplarville for the term of two years from the first Monday in January, A. D. 1915, to the first Monday in January, A. D. 1917. He was a mayor *de jure,* and under the statute was police justice and as police justice was *ex officio* a justice of the peace in and for the corporate limits of the said town. The exact wording of the statute being as follows: The mayor or mayor *pro tempore,* shall be the police justice; and in either case the police justice shall be *ex officio* a justice of the peace in and for the corporate limits (Code 1906, section 3399). Under this statute it seems that the mayor is not the *ex officio* justice of the peace, but that the police justice is and not only that, but in the alternative the mayor *pro tem* may be the police justice but also may be *ex officio* a justice of the peace.

If it be true that the mayor, by virtue of his additional office of police justice and *ex officio* justice of the peace is authorized by law as well as by the Constitution of the state to try civil actions, then would it not also be true that his alternative in the said offices, the mayor *pro tem* is invested with the same authority. And if the *pro tempore* mayor and police justice should exercise the right claimed by the mayor, police justice and *ex officio* justice of the peace to try civil actions would he be an officer *de jure* or *de facto?* After long search we can find no authority for the establishment of a court for the trial of civil actions composed of a judge and a substitute to act in his place.

Smith was police justice and on account of this fact *ex officio* justice of peace, the mayor *pro tem* was incumbent of both said offices with the same identical powers; there is nothing like this in the judiciary depart-

ment of the state of Mississippi or in that of the United States. If so, it would be a violation of the Constitution of the state of section 1 of article 1 thereof.

"The powers of the government of the state of Mississippi shall be divided into three departments, and each of them confided to a separate magistracy, to wit: Those which are legislative to one, those which are judicial to another, and those which are executive to another. Section 2 of article 1, declares that no person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments."

S. C. Smith was mayor of the town of Poplarville, but not *ex officio* justice of the peace, but on account of the additional office of police justice he held the office as *ex officio* justice of the peace; hence he had no legal right to try any case, even of violation of a town ordinance as mayor but by statute he shall be a police justice; he may sit as a committing court in all violations of the criminal laws of the state committed within the county outside of the municipal corporation and of all felonies, and bind over the accused to appear before the proper court having jurdisiction to try the same, or refuse bail and commit the accused to jail in cases not bailable. "He shall also be *ex officio* justice of the peace in all cases arising within the corporate limits of the municipality, and he shall discharge his duties as such." In addition to this duty he shall hear and determine all violations of the municipal ordinance and punish offenders therefor as prescribed. All these duties are such as belong to the police power of the municipality and of the state (see Code 1906, sections 3398, 3399), and he shall have a police court with the clerk of the municipality as clerk of the said court, and all other adjuncts to said court as is prescribed by Code

1906, section 3400. ''Every municipal corporation is provided with an executive head, usually styled the mayor whose duty usually is to see that the municipal ordinances are executed, and to preside at corporate meetings. Judicial duties are often annexed to those which properly appertain to the office, however, and he is authorized to judicially administer not only the ordinance of the corporation, but also the laws of the state, but no jurisdiction to try civil cases exist in the mayor unless conferred upon him by charter or statute.'' (19 Am. & Eng. Ency. Law (O. S.) p. 51 and note.)

The said S. C. Smith did not in this case sign himself, or try the case in his capacity as police justice and *ex officio* justice of the peace but as mayer and *ex officio* justice of the peace.

The mere fact that the statute makes a mayor an *ex officio* justice of the peace, in certain cases, and thereby annexes to his distinctive duties as mayor, an executive office, certain purely incidental police duties does not alter the paramount fact that the mayor of a town is, under the general law, distinctly an executive officer. All the judicial power which he may, as *ex officio* justice of the peace, exercise, is incidental, and not primary (see Code 1906, section 3377); Abbott's Municipal Corporations, section 570.

''In some states he (the mayor) is authorized to arrest and try offenders against certain ordinances passed by virtue of the police power.'' In these cases it has been held that the exercise of the power did not make him a part of the judiciary, the act is but an exercise of the police power. *State* v. *Armstrong*, 44 So. 809. We do not consider that this attacks the decision of this court in the case of *Altman* v. *Walls*, 71 So. 318, on any point. The said case having been tried on an agreed state of facts entirely different from those involved in the instant case.

This being in our opinion a void judgment and being without legal effect, it can be attacked at any time, and

binds and bars no one. *Lake* v. *Perry,* 95 Miss. 550, 49 So. 569.

We submit, that we think that the learned Chancellor below erred in dissolving the injunction in this case, and in not overruling the demurrer and making the injunction perpetual.

*W. A. Shipman* and *Stevens & Cook,* for appellee.

Appellant brings the case here to have this court pass upon the one legal question upon which it bottomed its bill for injunction. That question is whether a mayor and *ex officio* justice of the peace can legally try civil suits within the limits of the municipality of which he is mayor. Or, as opposing counsel puts it in his brief: "Has the mayor of a town the right to try civil actions in his capacity as a justice of the peace within the corporate limits of his municipality." We confidently submit that he has under section 172, Constitution of 1890, and section 3399, Code 1906.

Under section 172, Constitution of 1890, providing that "the legislature shall, from to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient," the legislature has the constitutional authority to give a mayor of a municipality jurisdiction of causes civil and criminal, within the municipality. The case of *Bell* v. *McKinney,* 63 Miss. 187, expressly holds that:

"Under article 1, section 31, and article 6, section 24, of the Constitution, which provides that the legislature may establish in addition to the courts designated in the Constitution other inferior courts, and in case of the misdemeanors therein enumerated may dispense with the inquest of a grand jury and authorize prosecutions before justice of the peace or such other inferior courts as may be established, it is competent for the legislature to invest the mayor of an incorporated town with the criminal jurisdiction of a justice of the peace,

or to declare that the mayor of such town shall be *ex officio* a justice of the peace in the corporate limits of the town in which he was elected. A mayor's court thus constituted would be an inferior court within the meaning of the constitutional provisions above referred to. (Pages 190-191 of the opinion.)"

It is to be noted here that this decision was rendered in 1885 when the Constitution of 1869 was in effect. and that article 6, section 24, of that Constitution is in practically the same identical words as is section 172, Constitution of 1890, and that article 1, section 31, Constitution of 1869, is carried forward in article 3, section 27, of the Constitution of 1890. It is manifest from a reading of these sections of the two Constitutions that the same constitutional authority existed when the case of *Bell* v. *McKinney* was decided as now exists. It is to be further noted that in that case the briefs of counsel for both parties discussed the constitutional authority of mayors to act as justices of the peace. So the constitutional question as to that right was contended for and against and the opinion of the court was responsive to the specific question. The court upheld the mayor's court as one authorized by the Constitution. The act of the legislature which was attacked as being unconstitutional in the Bell-McKinney case was the one conferring on mayors all the powers of justice of the peace in and for the several counties in which theis respective towns were situated. Laws 1876, page 33. The provision or act of the legislature so conferring the prerogatives of a justice of the peace on mayors is in effect the same as sections 3398 and 3399, so far as the question at issue is concerned. So not only the sections of the Constitution but the acts of the legislature, relating to the question, were the same then as now. Not only so, but the constitutionality of the act, making mayors *ex-officio* justices of the peace was threshed out by the parties and adjudicated by the court in the Bell-McKinney case, supra. It is therefore decisive since

dictating *Riley* v. *James,* 73 'Miss. 1, in which case our court referred to the said Bell-McKinney case as being decisive of the question under discussion.

We invite the court's attention to the decision as being conclusive upon the question of what the court held in the Bell-McKinney case. It serves too as a re-affirmance of the principle laid down in the Bell-McKinney case.

We confidently submit that under section 172 of the present Constitution the legislature had authority to confer upon mayors the powers of justice of the peace within the corporate limits of their respective towns. This the legislature did do by section 3399, Code of 1906. Said section should really be read in connection with section 3398. The latter section creates the office of police justice. At the conclusion of the section is this sentence: "He shall also be *ex officio* justice of the peace in all cases arising within the corporate limits of the municipality, and he shall discharge his duties as such."

. Section 3399, is in the following language: "Police Justices.—In cities having less than seven thousand inhabitants, the mayor and board of aldermen may elect, at the time provided for the election of other officers by them, a police justice, and, when necessary may elect a police justice *pro tempore;* and in all towns, villages and other municipalities where a police justice is not elected, the mayor, or mayor *pro tempore,* shall be the police justice; and in either case the police justice shall be *ex officio* a justice of the peace in and for the corporate limits."

Our supreme court by necessary inference if not by positive and unequivocal language, has upheld the statute conferring upon mayors the prerogatives of a justice of the peace in every variety of case. For instance, every variety of civil case has been passed upon by mayors acting in their capacity as *ex officio* justices of the peace within their corporate limits or beyond their corporate limits where a justice of the peace as such

could act beyond his district, and all of these cases have been uniformly upheld on appeal; likewise, our supreme court reports abound in decisions upholding convictions in every variety of criminal cases had before mayors acting in their capacity as *ex officio* justices of the peace. We refer especially to the following cases without undertaking to collate all of the cases of like character: *Smith* v. *Jones,* 65 Miss. 276, 3 So. 740; *Burnett* v. *State,* 72 Miss. 994; *Nickles* v. *Kendricks,* 73 Miss. 711; *Brown* v. *State,* 75 Miss. 842; *Washington* v. *State,* 93 Miss. 270, 46 So. 539; *McAlister* v. *City of Moss Point,* 51 So. 403; *Washington* v. *State,* 93 Miss. 270, 46 So., 539; *City of Laurel* v. *Turner,* 96 Miss. 631, 51 So. 403; *Ex parte Dickson,* 89 Miss. 778, 42 So. 233. Our argument is this: That if under our scheme provided by the Constitution and followed up by legislative enactment a mayor may sit as a court exercising judicial functions to try men for crime, *a fortiori* may he sit as judge in passing upon his property rights under the Constitution and the legislative enactment conferring this power upon him. There is as much of the judicial function brought into play in the trial of criminal matters as in the trial of civil matters. The same objection to the exercise by the mayor of the judicial function when primarily he is an executive officer may be urged against him whether he be trying men for crime or be determining their respective civil rights. So when it is admitted or found to be true that mayors may try men for crime it necessarily follows that he may act as judge in the trial of their property rights. We submit that section 2 of the Constitution invoked by opposing counsel has no application here because section 172 of the Constitution authorizes the conferring upon the mayor of judicial functions. Furthermore, we submit that this inferior court is not within the contemplation of section 2 of the Constitution and does not constitute a part of the grand division of the government of the state of

Mississippi as declared in article 1, section 1 of the Constitution.

We submit that the mayor of Poplarville acted within his constitutional authority in rendering the judgment enjoined.

Opposing counsel cite the case of *State* v. *Armstrong,* 91 Miss. 513, 44 So. 809, as being decisive in their favor of the question here under consideration. In that case Armstrong was elected a justice of the peace and while he was holding that office for a regular justice beat and was discharging the duties of that office, which was an elective office created under section 171 of the Constitution providing for the election of justices of the peace, he was elected mayor of the town of Silver Creek and accepted that office and entered upon the discharge of its duties. An action was brought by the attorney-general for the purpose of ousting Armstrong from the office of justice of the peace on the ground that the two offices, that of justice of the peace for his district and that of mayor for his town, were incompatible and for that reason and also under the constitutional provision of section 2 the action of Armstrong in accepting the office of mayor vacated the office of justice of the peace. The case went up on demurrer. All the court held in that case was that Armstrong could not hold those two offices.

The foregoing discussion is predicated upon the idea earnestly and confidently entertained that the mayor of Poplarville was a *de jure* justice of the peace at the time of the proceeding and the rendition of judgment complained of. We earnestly insist that he was a *de jure* justice of the peace but whether he was such or not is immaterial for the reason that at the time of the proceeding complained of and of the rendition of the judgment here enjoined he was exercising the duties of mayor and *ex officio* justice of the peace and was to say the least a *de facto* mayor and *ex officio* justice of the peace when he assumed jurisdiction of the suit and

rendered the judgment enjoined. We invite the court's attention now to a careful consideration of the case of *B. Altman & Co.* v. *Wall,* 111 Miss. 198, 71 So. 318.

In conclusion we desire to say, reverting to the discussion with reference to section 2 of the Constitution, that there are many of the creations of the legislature which would fall within the condemnation of that section if the narrow interpretation of the same is had as is being attempted to be had by opposing counsel. For instance, the board of supervisors of a county exercise executive, legislative and judicial functions, and yet their acts in any of these departments go unquestioned. Likewise, the Railroad Commission is an executive and judicial and to some extent a legislative institution of the legislature. The same is true with reference to the drainage board created, already referred to herein. In fact there is an element of all of the departments in most every one of the organizations created by the legislature.

We therefore respectfully submit that the decree appealed from should be affirmed.

Cook, P. J., delivered the opinion of the court.

Appellees instituted a suit upon open account against the appellant in the court of S. C. Smith, mayor and *ex officio* justice of the peace for the town of Poplarville. Summons was issued and served on appellant. On the return day of the summons appellant appeared for the "special purpose of objecting to the jurisdiction of the court." This motion asked the court to dismiss upon two grounds, viz.

"I. The mayor and *ex officio* justice of the peace of a town is a public officer of the town and of the state belonging to the executive department; has no right to exercise any judicial power over civil cases.

"II. Because the right claimed by said mayor and *ex officio* justice of the peace is a violation of the

Constitution of the state of Mississippi, in that said Constitution provides in section 2, art. 1, that no person belonging to one department shall exercise any power belonging to another department.''

This motion was overruled, and judgment was entered .against the appellant for the amount sued for, and execution was issued thereon and levied upon certain named property of appellant.

A bill of complaint was then filed in the chancery court setting up the facts stated above and prayed for a temporary injunction restraining further proceedings in the premises. The temporary injunction was granted by the chancellor and duly served upon the defendants, appellees here. The defendants interposed a demurrer to the bill of complaint assigning the following grounds, viz.:

''(1) The complainant has not in and by its said bill of complaint made or stated such a case as entitles it, in a court of equity, to the relief therein prayed, or to any relief whatever, as against these defendants touching the matters contained therein, or any such matters.

''(2) Complainant shows by its said bill that the judgment rendered in the court of S. C. Smith, mayor and *ex offizio* justice of the peace in and for the town of Poplarville, on the 3d day of January, 1915, was and is a perfectly good, valid, regular, and subsisting judgment; that it was unsatisfied at the date of the filing of said bill of complaint in this court.

''(3) Complainant further shows by its said bill of complaint that the execution issued on said judgment by the said *ex officio* justice of the peace on the said 25th day of May, 1916, was, and is a perfectly good valid, regular, and existing writ of execution.

''(4) Complainant further shows by its said bill of complaint that the levy by John T. Boyd, marshal and *ex offizio* constable, of said writ of execution on the 31st day of May, 1916, upon the property of the defendant

in execution, the complainant here, and the return thereon, were and are a perfectly good, valid, regular, and lawful levy and return.

"(5) Complainant further shows by its said bill of complaint that the office of *ex officio* justice of the peace in and for the town of Poplarville was, on the date of the issuance of original process, on the date of the rendition of the judgment, on the date of the issuance of said writ of execution, and on the date of the return of said execution, an office under the law of the state of Mississippi, existing by virtue of a statute creating the same, the duties and functions whereof were performed by the person indicated by said statute and clothed with the insignia thereof.

"(6) Complainant further shows by its said bill of complaint that the office of *ex officio* constable in and for the said town of Poplarville was, on the date of the service of original process on the defendant therein, the complainant here, on the date of the return of said process, on the date of the levy of execution upon the property of said defendant in execution, and on the date of the return of said execution to the court from whence issued, an office existing under and by virtue of the law of the state of Mississippi, created by virtue of the statute made and provided therefor, the duties and functions whereof were performed by the person indicated by said statute and clothed with the insignia of said office.

"(7) Complainant further shows by its said bill of complaint that it had a plain, adequate, and complete remedy at law for any and all grievances it may have felt it had in the premises.

"(8) Complainant further shows by its said bill of complaint that it has negligently failed to pursue the remedy provided in such cases."

From a decree sustaining this demurrer and awarding damages, complainant, still complaining, appeals to the court.

It is earnestly insisted that this court, in *State* v. *Armstrong,* 91 Miss. 513, 44 So. 809, holds that a mayor of a town cannot exercise the functions of a justice of the peace; the two offices being incompatible under Constitution 1890, section 2. As we interpret the opinion in that case, the court held that a duly elected justice of the peace vacated his office when he accepted the office of mayor. We can see no reason to question the soundness of this decision. There we had a man who had been elected to the office of justice of the peace by the electors of the district, and afterwards elected by the electors of the town mayor of the town. The statute referred to in that case did not authorize, and probably could not constitutionally authorize, a justice of the peace to perform the duties of a mayor. The constitutional question raised in that case is thus referred to in the opinion:

"The question here is not so much whether the functions of the office of justice of the peace, which are judicial, are inconsistent with those incidental judicial functions which a mayor of a city may exercise as an *ex officio* justice of the peace under section 3399, Code of 1906, as whether the functions of a justice of the peace, which are strictly judiciary, are inconsistent with the usual, ordinary, and primary functions of a mayor of a city, which are strictly executive. The mere fact that the statute makes a mayor *ex officio* justice of the peace in certain cases, and thereby annexes to his distinctive duties as mayor, an executive office, certain purely incidental police duties, does not alter the paramount fact that the mayor of a town is, under the general law, distinctly an executive officer."

The situation in the Armstrong Case was not, as in this case, a mayor exercising the powers of a justice of the peace under the statute within the corporate limits of the town of which he was mayor, but just the reverse. All the court decided in the Armstrong Case was that a

judicial officer vacated his office when he accepted an executive office.

In this case the statute which makes a mayor of a town *ex officio* a justice of the peace within the corporate limits of the town is challenged. To·put the question in another way: Is section 3399, Code of 1906, unconstitutional? We do not think that the Armstrong Case decides or considers this question. This precise question was considered and answered in the negative in *Bell* v. *McKinney,* 63 Miss. 187, which was cited and approved in *Riley* v. *James,* 73 Miss. 3, 18 So. 930.

In *Heggie* v. *Stone,* 70 Miss. 39, 12 So. 253, we decided that it was not competent for the legislature to clothe the mayor of a town comprising a part of a district with the jurisdiction of the whole district.

It has not been decided that the legislature could not create an inferior court by making the mayor of a town *ex officio* a justice of the peace, but this court did expressly decide to the contrary in *Bell* v. *McKinney,* supra.

So we believe that the chancery court reached the proper conclusion when it sustained the demurrer to the bill.

*Affirmed.*

ETHRIDGE, J. (dissenting). Section 1 of the Constitution provides that the powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit: Those which are legislative to one; those which are judicial to another; and those which are executive to another. Section 2 provides:

"No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices

held by the person so accepting in either of the other departments."

It will be seen from section 2 that the Constitution prohibits a person belonging to one of these departments from exercising any power properly belonging to either of the others. If the Constitution is the supreme law, it necessarily follows that the legislature could not confer upon any person the right to exercise powers in more than one department of the government. If then, the mayor is an executive officer within the meaning of section 2 of the Constitution, the legislature could have no power to confer a purely judicial office upon the mayor as an incident of his executive office. In vain will the Constitution prohibit acts by the legislature if the courts do not stand behind and enforce the Constitution when the legislature violates its provisions. Section 3399 of the Code of 1906 provides that in cities having less than seven-thousand inhabitants the mayor and board of aldermen may elect, at the time provided for the election of other officers by them, a police justice, and, when necessary, may elect a police justice *pro tempore;* and in all towns, villages, and other municipalities where a police justice is not elected the mayor, or mayor *pro tempore,* shall be the police justice; and in either case the police justice shall be *ex officio* a justice of the peace in and for the corporate limits. The statute nowhere defines what the jurisdiction and powers of an *ex officio* justice are. But by the very meaning of the words "*ex officio* justice of the peace" it means a justice of the peace within the meaning of that term in the Constitution and statutes of the state, and to those statutes we must go for the extent and nature of the powers and jurisdictions conferred upon the justice of the peace's office. We find that a justice of the peace is a court provided for in the Constitution itself (section 171), and is purely a judicial office vested with no executive or legislative powers whatever. In the case of *State of Mississippi* v. *Armstrong*

in 91 Miss. 513, 44 So. 809, this court had presented to it for the first time the question for decision as to whether, under section 2 of the Constitution, the same person could hold the office of mayor and that of justice of the peace. The court, responding to that question, decided that the mayor was an executive officer within the meaning of section 2 of the Constitution, and that he could not hold the office of justice of the peace at the same time while acting and accepting the office of mayor, and that the fact that he accepted the office of mayor was itself a vacation of his judicial office.

A number of the states hold that the provision of the Constitution with reference to the separation of the departments of government into three separate departments does not apply to municipalities, and that municipal officers do not come within the intendment and meaning of this section of the Constitution. If the majority opinion reversed the policy and holding of this court and committed itself to the principles of those decisions in those states, it would be pursuing a consistent and logical course, while, in my opinion, the Constitution does and should apply to municipal officers within the constitutional provisions. At all events, our state has firmly committed itself to the doctrine that the Constitution, at least since the adoption of the Constitution of 1890, applies to municipalities and their officers as well as to state officers. The case of Armstrong, above cited, expressly decided this question with reference to section 2 of the Constitution, and other cases have applied numerous other sections of the Constitution to municipal officers. For instance, it was held in the case of *Lizano* v. *Pass Christian,* 96 Miss. 640, 50 So. 981, that section 175 of the Constitution applied to municipal officers. In the case of *Monette* v. *State,* 91 Miss. 662, 44 So. 989, 124 Am. St. Rep. 715, it was held that section 20, providing that all officers should hold for a fixed term, applied to police officers of the municipality, and held an act

of the legislature unconstitutional authorizing the removal of police officers by a city board called police commissioners. In the case of *Kierskey* v. *Kelly*, 80 Miss. 803, 31 So. 901, it was held that section 266 of the Constitution, prohibiting any officer of this state from holding an office of honor, trust, or profit under the United States, applied to a city assessor. In the case of *Adams.* v. *Mississippi State Bank*, 75 Miss. 701, 23 So. 395, and *Adams* v. *Bank of Oxford*, 78 Miss. 532, 29 So. 402, it was held that section 112 of the Constitution, providing for equality and uniformity of assessment and taxation throughout the state, applied to municipalities. There are numerous other decisions holding, in effect, that the provisions of the Constitution apply to municipal governments in this state, and if the court is to be consistent, it ought to overrule these cases and announce that the provisions of the Constitution do not apply to municipal governments, or else they should adhere to the principles of those decisions and uphold the Constitution of the state.

The majority opinion undertakes to differentiate the present case from the Armstrong Case, supra, but there is a total failure of making any such distinction apparent. The judgment involved in this suit was a civil suit in a court of the mayor acting as a justice of the peace. It did not purport to be an exercise of police powers in the city as such, but the mayor was undertaking to act as the justice of the peace of the state exercising certain jurisdiction as any other justice of the peace under the statute would exercise. It was not a question of undertaking to enforce any ordinances. In the Armstrong Case the court, quoting from Abbott on Municipal Corporations, section 570, used the following language:

" 'In some states he is authorized to arrest and try offenders against certain local ordinances passed by virtue of the police power. In these cases it has been held that the exercise of the power does not make him a part of the judiciary; the act is but an exercise of

the police power.' We do not think the authorities cited by the learned counsel for the appellee are directly in point in this case.''

By reference to section 570 of 2 Abbott on Municipal Corporations we find that this statement is supported by citations from Alabama, Iowa, Kentucky, Louisiana, Maryland, Missouri, North Carolina, and Virginia. It will be found from an examination of the decisions of these courts that such states either do not have the provision of section 2 of our Constitution. or any substantially similar provision, or else that they construe the Constitution so' as not to apply to municipal corporations. In the case of *State ex rel. Wilkinson* v. *Lane,* 181 Ala. 646, 62 So. 31, the Alabama court applies this holding that a municipal officer did not come within the terms of the Alabama Constitution providing for the separation of the powers of government; in other words, that the Constitution did not apply. Likewise in the state of Florida, in the case of *Munn* v. *Finger,* 66 Fla. 572, 64 So. 271, 51 L. R. A. (N. S.) 631, the Florida court held that their Constitution upon this subject did not apply to municipalities, and that a municipal officer was not a state officer, and that exercising powers in the separate departments or the blending of powers partaking of the different natures did not violate the law of that state. In the case of *State of Minnesota* v. *City of Mankato,* 117 Minn. 458, 136 N. W. 264, 41 L. R. A. (N. S.) 111, the court of that state held that the provision of the Constitution of that state providing the powers of government under executive, legislative, and judicial did not apply to municipal governments. In the case of *Eckerson* v. *City of Des Moines,* 137 Iowa, 452, 115 N. W. 177, it was held that an act conferring blended powers upon city officers did not conflict with the Constitution of the United States, providing a republican form of government, though the act conferring such powers on the municipal government committed all powers to one body in violation

of the separation of the departments of the government. And likewise the Kentucky court, in *Bryan* v. *Voss*, 143 Ky. 422, 136 S. W. 884, held that a commission form of government blending all the powers in one set of officers did not violate the provisions of the Kentucky Constitution forming the departments of government or similar provisions. In 6 Amer. & Eng. Enc. of L., pp. 1006, 1007, it is stated that the Constitutions of Kansas, North Dakota, Ohio, Pennsylvania, Washington, and Wisconsin contain no such provisions as sections 1 and 2 of the Mississippi Constitution, above referred to. The general provision directing the separation of governmental powers into legislature, executive, and judicial obtains in the majority of the states, though the majority of the states do not have such a provision as section 2 of our Constitution. The states which are listed in the Amer. & Eng. Enc. of L., above cited, having clauses similar to section 1 of the Constitution above set out, but not having section 2, are Alabama, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, Texas, Vermont, Virginia, West Virginia, and Wyoming. It will be seen from the authorities listed in Abbott on Municipal Corporations that the Constitutions of the states in which such decisions were decided contain no such prohibition as contained in section 2 of our Constitution. Relatively few of the states have section 2 of our Constitution or any equivalent section, and of course decisions from those states are not controlling in states having such prohibitions as ours has. It is a familiar rule of constitutional construction that a prohibition in the Constitution is self-executing and needs no legislation to give it effect. Where the state Constitution, being the supreme law of the land, prohib-

its governmental action of any kind, the legislature
is powerless to act so as to give effect to a policy
or statute prohibited by the Constitution.   In the case
of *Lawson* v. *Jeffries,* 47 Miss. 686, 12 Am. Rep. 342,
it was held that a constitutional convention itself could
not exercise judicial power, but could only exercise
legislative powers, and the courts refused to enforce an
ordinance of the constitutional convention on this
ground.   In *Haley* v. *State ex rel. Mortimer, District
Attorney,* 108 Miss. 899, 67 So. 498, this court held that
a member of the board of supervisors of the county
by the very act of the accepting of a position on the Yazoo
& Mississippi, etc., board vacated his position of super-
visor of the county on the theory that the supervisor's
office was a judicial office, and that the other office was in
one of the other departments of the government.   In
the case of *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec.
169, the court of this state held that, where the Constitu-
tion of the state prohibited a member of the legislature
from being appointed to an office created while he was
in the legislature, an appointment made in violation of
such law was void absolutely both for want of power
in the functionary in whom the appointment was vested
to make it and the want of power in the person to
accept it.   In the fourth syllabus of this case we find
the following:

"It is of the nature and essence of the fundamental
law of a state that it avoids every act done in violation
of its provisions; and hence the appointment of a mem-
ber of the legislature to an office, in violation of sec-
tion 26, article 3, of the Constitution (1832) is absolute-
ly void, both for want of capacity in the appointee
to accept and for want of power in the functionary
in whom the appointment is vested to make it."

It was stated in the fifth syllabus of this case:  "The
rule of the common law, which holds as valid, in respect
to the public and third persons, the acts of public
officers, who are such *de facto* acting under color of

office by an election. or appointment not strictly legal, does not apply where a statute or the Constitution declares the election or appointment to be absolutely void; and hence the acts of an incumbent of an office, who was constitutionally ineligible to fill [it], are null and void.''

In the sixth syllabus of this case the following is stated: ''An appointment to office, made absolutely void by the Constitution or legislative enactment, may be so declared wherever it comes, even incidentally, in question.''

In the case of *Norton v. Shelby County,* 118 U. S. 425, 441, 6 Sup. Ct. 1121, 1125, 30 L. Ed. 178, on page 186 of the Law. Ed., the supreme court of the United States used the following language:

''But it is contended that, if the act creating the board was void, and the commissioners were not officers *de jure,* they were nevertheless officers *de facto,* and that the acts of the board as a *de facto* court are binding upon the county. This contention is met by the fact that there can be no officer, either *de jure* or *de facto,* if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence. Some persons pretended that they held the office, but the law never recognized their pretensions, nor did the supreme court of the state. Whenever such pretensions were considered in that court, they were declared to be without any legal foundation, and the commissioners were held to be usurpers.

''The doctrine which gives validity to acts of officers *de facto,* whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Officers are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the

evidence of such offices and in apparent possession of their powers and functions. For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question. But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an officer who holds no office, and a publice office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject but for the earnest contention of plaintiff's counsel that such existence is not essential, and that it is sufficient if the office be provided for by any legislative enactment, however invalid. Their position is that a legislative act, although unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement. An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.''

I think this announcement by the greatest court in the world is peculiarly applicable to this case. The Constitution having forbidden the blending of the functions of the three departments of government in one officer, certainly the legislature could not, in violation of this constitutional mandate, confer a purely judicial office upon a purely executive officer. Again the Constitution expressly forbids any executive officer from exercising any purely judicial power, and while the legislature had power under section 172 of the Con-

stitution to create inferior courts and confer such inferior jurisdiction upon them as the legislature thought proper, it could not violate section 2 or section 1 of the Constitution in creating such office. In other words, its power to create offices is ruled by the sections of the Constitution (1 and 2) prohibiting the delegation to the same officer functions in three departments of the government. To hold otherwise would be to limit these provisions of the Constitution to the offices created by the Constitution itself. The rule is that the acts of a *de facto* officer are valid, if there is a *de jure* office to fill; but, if there is no *de jure* office, the fact that a person assumed to be an officer could have no legal or valid effect. 8 Amer. & Eng. Enc. of L. 794.

In reference to construing a Constitution, in 8 Cyc. at page 729, it is stated:

"A written Constitution is to be interpreted and effect given to it as a paramount law, to which all other laws must yield, and it is equally obligatory upon all departments of the government and individual citizens alike. It is not always necessary, in order to render a statute invalid, that it should contravene some express provision of the Constitution; if the act is inhibited by the general scope and purpose of the instrument, it is as much invalid as though prohibited by the express letter of some of its provisions."

On page 730 it is stated:

"The whole instrument is to be examined with a view to ascertaining the meaning of each and every part. The presumption and legal intendment is that each and every clause in a written Constitution has been inserted for some useful purpose, and therefore the instrument must be construed as a whole in order that its intent and general purposes may be ascertained; and as a necessary result of this rule it follows that, wherever it is possible to do so, each provision must be construed so that it shall harmonize with all others, without distorting the meaning of any of such provisions,

to the end that the intent of the framers may be ascertained and carried out and effect given to the instrument as a whole.''

On page 807, 8 Cyc. par. 3, we find the following:

''The legislative power of a government, wherever it is undefined, will include both the judicial and the executive functions; and it has been held that there are cases in which the legislative and judicial powers blend to such an extent that the exercise to a certain degree of judicial authority by the legislature in the enactment of laws is not open to objection as encroaching upon the province of the judiciary; but this doctrine was subsequently denied in later decisions of the same court in which it was announced, and it has not been reasserted. The distinction between the legislative and the judicial functions is a vital one, and not subject to alteration or change either by legislative action or by judicial decrees; for the lines which separate their powers are to be found in all Constitutions, and are as much a part of them as though they were definitely and clearly defined. The judiciary cannot consent that its province shall be invaded by either of the other departments of the government, and it has been held that its province cannot be invaded even by a constitutional convention in the framing of a new Constitution.''

In 6 Amer. & Eng. Enc. of L. p. 924, clause ''c,'' it is stated:

''In case the real intention, as deduced from the instrument itself, is not indicated by the literal sense of the terms employed, the former must prevail over the latter. And where the literal interpretation involves any palpable absurdity, contradiction, or, as it has been held, any extreme hardship or great injustice, the courts have deviated a little from the literal meaning of the words, and interpreted the instrument according to the apparent intent of its authors.''

No provision of the Mississippi Constitution has been pointed out that in any way modifies the positive pro-

hibition and the positive commands and injunctions of sections 1 and 2. The court in the present case will not overrule the Armstrong Case, though there is no difference perceptible to me between the functions and powers and nature of a justice of the peace *ex officio* and a justice of the peace regularly elected in the district. It is the drawing of distinctions that do not exist that brings the law into confusion and the courts into contempt. I venture the assertion that there is no lawyer (outside of the majority of this court) that can find any substantial distinction between an *ex officio* justice of the peace and an ordinary justice of the peace so far as the nature and incident of his powers and duties are concerned. The only difference whatever is in the territorial limits in which the one may exercise jurisdiction as compared to the other that any difference whatever can be found. The majority opinion cites *Bell* v. *McKinney*, 63 Miss. 187, and *Riley* v. *James*, 73 Miss. 1, 18 So. 930, as authority for its holding in this case. In the presentation and decision of these cases the section of the Constitution bearing on the departments of government was not referred to at all. The attack on the law was not presented from this angle or for this reason. The court has always pursued a policy of refusing to reach out and decide questions not presented in the record before them, and no doubt they overlooked the provision of the Constitution with reference to the separation of the departments of government or pretermitted any decision until a proper case should arise. It may be that this rule is not always a wise one, but it has been consistently followed by the court, and it is, to say the least of it, generally a wise policy to forbear to decide a constitutional question that is not raised by the pleading or the argument. As before stated in this opinion, the first time that this question was presented with reference to the provisions of section 1 and 2 of the Constitution was in the Armstrong Case. The question was again presented in the

*Haley Case* in 108 Miss. above cited, and in both cases it was held that two powers could not be exercised by the same officer. The present constitutional provision is somewhat different from a corresponding provision in the Constitution of 1869. Section 2 of article 3 of the Constitution of 1869 upon this subject provides:

"No person or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

It will be noted that this section has been changed by adding after "being one" the words "or belonging to," and also the provision that:

The acceptance of an office in either of said departments "shall of itself and at once vacate any and all offices held by the person so accepting in either of the other departments."

So we find that the policy of the constitutional convention was to make the prohibition more radical and more effective so as to assure that one person could not exercise two or more of the powers of government at the same time. Certainly, if a person vacates an office by accepting a position in another office, his act could not be valid. Again, the Constitution of 1869 was much less comprehensive in its provisions and much more limited in its general field, and it could well have been construed as not applying to municipalities. But, however this may be, the court has, since the adoption of the Constitution of 1890, made its provisions applicable to all the agencies of the state government howsoever and by whomsoever exercised. The logical effect of the Armstrong Case is to overrule the cases of *Bell* v. *McKinney,* 63 Miss. 187, and *Riley* v. *James,* 73 Miss. 1, 18 So. 930. The majority makes much of the expression in the opinion of the Armstrong Case that:

"The question here is not so much whether the functions of the office of justice of the peace, which are judicial, are inconsistent with those incidental judicial

functions which a mayor of a city may exercise as an *ex officio* justice of the peace under section 3399, Code of 1906, as whether the functions of a justice of the peace, which are strictly judicial, are inconsistent with the usual, ordinary, and primary functions of a mayor of a city, which are strictly executive. The mere fact that the statute makes a mayor *ex officio* justice of the peace in certain cases, and thereby annexes to his distinctive duties, as mayor, an executive office, certain purely incidental police duties, does not alter the paramount fact that the mayor of a town is, under the general law, distinctly an executive officer.. All the judicial powers which he may, as an *ex officio* justice of the peace, exercise, are incidental, and not primary.''

It will be observed, I think, by the thoughtful reader, that the court had in mind mere incidental police duties and not any right or power in the mayor to try civil causes belonging purely to a justice of the peace. The Constitution (section 167) provides that all civil officers are conservators of the peace and invested with ample power as such. This provision in the Constitution might, by a strained construction, authorize the mayor to try violations of mere police regulations within the municipality not against the laws of the state, but certainly it could not be that these words could be tortured into conferring the right to exercise judicial powers generally. These words have a well-defined meaning at common law, and are defined as ''common-law officer whose duties as such were to prevent and arrest for breaches of the peace any persons.'' Words and Phrases (2 Ser.), 901; *State* v. *Shockley*, 29 Utah, 25, 80 Pac. 865, 110 Am. St. Rep. 639; 8 Cyc. 586.

The frequency with which I have been impelled to dissent makes a dissent embarrassing in this case, but I cannot reconcile my duties with concurring in what I believe to be a palpable and fundamental error in construing the Constitution of the state. The Constitution is the law of the people in their sovereign capacity by

which they prohibit their agents in the legislative, executive, and judicial departments of the government from exercising powers deemed inimical to the public good.