631 So.2d 758 (1994)
In re Inquiry Concerning Municipal Judges W.T. GRANT, Ernest Herring, John Beamon and Harold Ward, Sr.
No. 92-CC-1248.
Supreme Court of Mississippi.
January 27, 1994.
*759 Luther T. Brantley, III, Jackson, for petitioner.
Michael C. Moore, Atty. Gen., Maudine G. Eckford, Sp. Asst. Atty. Gen., Jackson, for amicus curiae.
EN BANC.
SMITH, Justice, for the Court:
This cause comes to this Court from the Mississippi Commission on Judicial Performance on the recommendation that W.T. Grant, Ernest Herring, John Beamon and Harold Ward, Sr. be suspended as municipal court judges as long as they are mayor or mayor pro tempore of their respective municipalities. Also raised by the Commission is the constitutionality and future applicability of § 21-23-5 of the Mississippi Code Annotated (1972) which allows mayors of small municipalities to also serve as municipal judges. The Commission held that the code section was unconstitutional under Article I, Sections 1 and 2 of the Mississippi Constitution of 1890. The State, through the Office of the Attorney General, has submitted an amicus brief in support of the constitutionality of § 21-23-5.
This Court today holds that there is an unavoidable conflict of interest in the holding of the dual offices of mayor and municipal judge and, as such, no individual should hold both offices. While we are unable to state that the statute is unconstitutional under the sections of the state constitution dealing with separation of powers; nevertheless the statute will be considered as having no future application. We accept the recommendation of the Commission suspending the municipal court judges.

THE FACTS
The Mississippi Commission on Judicial Performance received calls, complaints and inquiries concerning mayors serving as judges. Questions concerning the separation of powers became apparent, as did the conflict of interest of mayors serving as judges. In 1989, the case of Commission v. Thomas, 549 So.2d 962 (Miss. 1989) was appealed to the Mississippi Supreme Court. In that case, some mayors were convicted of certain crimes, federal felonies and state misdemeanors, and were removed from their judicial offices. The Court was asked to rule that § 21-23-5 of the Mississippi Code Annotated (1972) was unconstitutional. This Court did not address the question.
Subsequently, there were other complaints concerning mayor judges and these judges resigned, so the question was not brought back before this Court for determination. The Commission then recommended to the legislature that § 21-23-5 be amended because of the alleged conflict. In the fall of 1991, the Mississippi Municipal Association was contacted and advised by the Commission of the conflict in the hope that legislation would be proposed to resolve the conflict or bring about significant changes to address the problem. Once again, no action was taken in the matter.
In January and February of 1992, the Commission took note that there were 65 mayor judges serving in towns with population less than 10,000. On March 17, 1992, the Commission advised these mayor judges *760 that they were identified as municipal judges and that there was a conflict placing them in violation of the Mississippi Constitution and Section 3C(1)(d)(i) of the Code of Judicial Conduct. The letter further notified the judges of the upcoming filing of a formal complaint as to any mayor serving as municipal judge when the Commission met in April 1992.
The formal complaint was filed on May 14, 1992. At that time there were only 8 remaining mayor judges of the original 65. At the time of the hearing on October 8, 1992, there were only 4 mayor judges remaining: one mayor judge was in default, and the commission waited until the end of the hearing to determine whether two additional mayor judges would be in default as well. Mayor Judge W.T. Grant, of the co-chartered municipality of Plantersville, Mississippi, appeared to contest the matter. He was not represented by legal counsel at the hearing. Testifying, in addition to Mayor Grant, were the Police Chief of Plantersville, Ed Fugitt, and Patrick A. Dunne, Sr., the executive director of the Mississippi Municipal Association and president of Public Services, Inc. a consulting firm to local governments. Mr. Dunne was also affiliated with the National Association of Towns and Townships.
Mayor Judge W.T. Grant is the mayor of Plantersville, Mississippi, with a population of about 1,137. In Plantersville's budget forecast presented at the hearing, the third largest amount of expected revenue was to come from fines, which were estimated to amount to approximately $16,500, and would be assessed in municipal court.
Grant became a municipal judge by relieving one of the local justice court judges because the justice court judge charged the town $75.00 per day plus traveling expenses regardless of whether he spent the whole day or a couple of hours while the mayor does not receive additional pay serving as municipal judge. Grant stated that a judge "hardly ever" took affidavits, but issued warrants. Court was held on the first and third Thursday of the month.
Statistics on Plantersville Municipal court showed that of 201 cases reported for the last fiscal year, 167 defendants were found guilty and 3 not guilty. Ten warrants were issued, 10 cases were dismissed, and 13 were cases retired to the file.
All monies collected through fines went into a general fund, administered by the mayor and clerk. The Board of Alderman determined how the money was to be disbursed. Mayor Judge Grant further stated that, from his knowledge of the Canon of Judicial Ethics, he had "disqualified himself in a number of cases, and it was where they were too close for me, or even a case of kinfolks."

DISCUSSION
The Commission takes the position that § 21-23-5, which allows a mayor or mayor pro tempore to serve as municipal judge, is unconstitutional pursuant to Article I, §§ 1 and 2 of the Mississippi Constitution. Article I, §§ 1 and 2 read as follows:
Section 1. The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy to wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
Section 2. No person or collection of persons being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said department shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other department.
Mississippi Code Annotated, Section 21-23-5 is as follows:
In any municipality having a population of less than ten thousand (10,000) ... it shall be discretionary with the governing authorities of the municipality as to whether or not a municipal judge or a prosecuting attorney ... shall be appointed... . In all municipalities where a municipal judge is not appointed, the mayor, or mayor pro tempore, shall be the municipal judge, but he shall not receive additional compensation from the municipality for such service.
*761 The issue concerning the separation of powers in state government has a long history. The question is whether the separation of powers pertains to local governments. In State v. Armstrong, 91 Miss. 513, 44 So. 809 (1907), the Court held that the office of the justice of the peace, a judicial officer, and office of the mayor were "inconsistent." Therefore, one could not serve both offices simultaneously. Id. at 516, 44 So. 809. The question was whether the "strictly judicial" functions of the justice of the peace are "inconsistent" with the "usual, ordinary and primary functions of a mayor of a city, which are strictly executive." Id. at 516-517, 44 So. 809. The Court followed its analysis by stating that:
The mere fact that the statute makes a mayor ex-officio justice of the peace in certain cases thereby annexes to his distinctive duties as mayor, an executive office, certain purely incidental police duties, does not alter the paramount fact that the mayor of a town is under the general law, distinctly an executive officer. All the judicial powers which he may, as an ex officio justice of the peace, exercise are incidental, and not primary.
Id. at 517, 44 So. 809.
In a later case, Poplarville Sawmill Co. v. A. Marx & Sons, 117 Miss. 10, 77 So. 815 (1918), the Court noted that Armstrong stood for the proposition that a judicial officer vacates his seat when elected to the executive office. 117 Miss. at 22, 77 So. 815. In Poplarville the challenged statute was one that made the mayor of the town "ex officio a justice of the peace within the corporate limits of the town." Id. The question was whether, then section 3399, Code of 1906 was unconstitutional. The Court did not follow the holding of Armstrong, but, looked to the older case of Bell v. McKinney, 63 Miss. 187 (1885), where the Court said that the courts will not hold a statute unconstitutional unless "its repugnance to the constitution is clear and not doubtful." Id. at 189. Further, it was held that
the legislature may establish inferior courts ... it is competent for the legislature to invest the mayor of an incorporated town with the criminal jurisdiction of a justice of the peace, or to declare that the mayor of such town shall be ex officio a justice of the peace in the corporate limits of the town which he was elected.
Id. at 190-191.
In another earlier case, Broadus v. State, 132 Miss. 828, 96 So. 745 (1923), the issue was whether it was constitutional for Broadus to accept the office of trustee of a school district while serving as a member of the board of supervisors. The Court determined that
The duties of a trustee are not wholly executive nor entirely judicial but the office is largely ministerial, and we see no constitutional reason why a supervisor, an office in the judicial department, though also legislative and administrative in character, cannot consistently exercise the duties of the office of school trustee which office is not in a wholly different department of the government as meant by section 2 article 1 of our state Constitution.
Id. at 833, 96 So. 745. The Court also stated that they thought that the office of the school trustee is an "administrative office, and would appear to have many duties of executive or ministerial, and quasi judicial character." Id. Thus there was no violation of the separation of powers.
A recent case, Alexander v. State By and Through Allain, 441 So.2d 1329 (Miss. 1983), addressed the question of whether state legislators were violating Article I, Sections 1 and 2 by serving on certain boards and commissions, most notably the Commission of Budget and Accounting, Board of Economic Development, Board of Trustees of Public Employee's Retirement System and Central Data Processing Authority. While this case does not address squarely the issue at hand, it does address the conflicts that arise between the separate governing functions. The Court declared the need to
[E]xamine the scope and depth of the legislative intrusions, if there be such ... if the encroachment be occasional and thought necessary for efficiency in government, and if the transgression be into an administrative matter with no inherent danger of enlargement then the argument ... that efficiency in government requires *762 some overlapping, has definite force. However, if the duties and responsibilities of the boards and commissions are ongoing and are in the upper echelons of governmental affairs, as are the boards and commissions under consideration, then the legislative trespass reaches constitutional proportions.
Id. at 1337.
The distinguishing factor between Broadus and Alexander are that Broadus deals with the separation of powers at the county level which "is important, but it in no way is authority for the contention that a member of the legislative department may exercise powers at the core of executive power." Alexander, 441 So.2d at 1337.
More recently, this Court considered the case of Mississippi Judicial Performance Commission v. Thomas, 549 So.2d 962 (Miss. 1989). In this case, Thomas was a mayor and municipal judge of Glendora. He pled guilty to operating an illegal gambling business, thereby violating 18 U.S.C. Section 1955. He was convicted for possession of whiskey for resale, selling alcohol to minors, and selling beer without a license. The Court, relying on Bell v. McKinney, noted the authority of the legislature to create inferior courts, primarily municipal courts where the mayor also acts as a judge. Thomas was suspended pursuant to Mississippi Constitution of 1890 Article VI, Section 177A where the Supreme Court may take action, by recommendation of the Commission on Judicial Performance, to remove, suspend, fine, or publicly censure or reprimand any justice or judge of the state for violating his office. Therefore, this court never addressed the issue of the constitutionality of Section 21-23-5 of the Mississippi Code.
Another recent case, Polk v. State, 612 So.2d 381 (Miss. 1992), presented the issue of whether the mayor acted as a detached and neutral magistrate in issuing a search warrant. The defendant argued that because the mayor was part of the executive branch, he could not serve in a judicial function as a magistrate. This Court cited the statutory authority of sections 21-23-5 and 21-23-7(3) and held that Port Gibson is a municipality of less than 10,000 in population, and the issuing of a search warrant was valid and lawful.
The United States Supreme Court has in two cases ruled on mayor-judge situations. These decisions therein are fact driven. First, Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), where a defendant was convicted of violating the Ohio Prohibition Act and was tried before the village mayor. The defendant claimed that he was deprived of due process of law because the mayor had a pecuniary interest in convicting him in obtaining the cost and fees that the town otherwise would not have received if the defendant had been acquitted. The defendant moved for dismissal based on the disqualification under the Fourteenth Amendment. The mayor-judge denied the motion. The Court noted that "[t]here is, no way by which the mayor may be paid for his service as a judge, if he does not convict those who are brought before him... ." Id. at 520, 47 S.Ct. at 440. The Court further stated that the general rule is that "officers acting in a judicial or quasi judicial capacity are disqualified by their interest in the controversy." Id. at 522, 47 S.Ct. at 441.
It is worth noting that Tumey was a criminal case. The Court took note of the violation of the defendant's right to due process as guaranteed by the Fourteenth Amendment when the defendant would "subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in the case." Tumey, 273 U.S. at 523, 47 S.Ct. at 441. However, the Court looked closer at the mayor-judge responsibility in municipalities. The Court stated that
[I]t is, of course, so common to vest the mayor of villages with inferior judicial functions that the mere union of the executive power and the judicial power in him can not be said to violate due process of law. The minor penalties usually attaching to the ordinances of a village council, or to the misdemeanors in which the mayor may pronounce final judgment without a jury, do not involve any such addition to the revenue of the village as to justify the *763 fear that the mayor would be influenced in his judicial judgment by that fact.
273 U.S. at 534, 47 S.Ct. at 445.
The second United States Supreme Court decision, Ward v. Village of Monroeville, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972) also involved the issue of due process in criminal cases. The Court, following the decision of Tumey, held that the defendant's due process right was violated because the mayor had substantial executive authority, including responsibilities for revenue production and law enforcement. Much of the income of the village came from the court fines. The Court was careful to note that it intimated "no view that it would be unconstitutional to permit a mayor or similar official to serve in essentially a ministerial capacity in a traffic or ordinance violation case to accept a free and voluntary plea of guilty or nolo contendere, a forfeiture of collateral, or the like." Id. at 62, 93 S.Ct. at 84.
Finally, and probably more persuasive than the cases cited above, is the case of Ball v. Fitzpatrick, 602 So.2d 873 (Miss. 1992). Fitzpatrick held two positions with Lowndes County government units. He served as the Veterans Administration Clerk and Inventory Control Clerk. He was also an elected member of the Columbus City Council. Allegedly, Fitzpatrick served in two separate departments of the government  the executive and/or judicial and the legislative. The Chancellor determined that Fitzpatrick's positions were "ministerial" and not public offices.
In his concurring opinion, Justice Banks stated that "[i]n my view ... we should abandon once and for all the idea that the constitutional doctrine of separation of powers applies to local government." 602 So.2d at 877. In support of this, Justice Banks cited numerous cases where other states have held that the separation of powers does not apply to local government. Ghent v. Zoning Commission, 220 Conn. 584, 600 A.2d 1010, 1012 (1991) ("The constitutional provision [of separation of powers] applies to the state and not to municipalities, which are governed by charters and other statutes enacted by the legislature.); Tendler v. Thompson, 256 Ga. 633, 352 S.E.2d 388 (1987) ("doctrine of separation of powers applies only to state and not to municipalities or to county government"). See also Willsey v. Newlon, 161 Ind. App. 332, 316 N.E.2d 390, 391 (1974), Wilson v. City of New Orleans, 466 So.2d 726, 729 (La. App. 1985), County Council for Montgomery County v. Investors Funding Corp., 270 Md. 403, 312 A.2d 225, 243 (1973).
Notwithstanding that the statute is not offensive to the separation of powers doctrine and withstands an attack on its constitutionality pursuant to Article I, §§ 1 and 2, this Court proscribes the use of this statute under the authority which Article 6 § 177A of the Constitution grants this Court and the Commission. While within constitutional parameters as to the separation of powers requirement of the Constitution, the statute nonetheless promotes "conduct prejudicial to the administration of justice which brings the judicial office into disrepute," as found in § 177A and may in some circumstances be violative of a defendant's right to due process of law.
This Court has recognized that mayor judges are true judges and that this Court by mandate exercises supervisory authority over all the courts of the state and judicial officials. Thomas, 549 So.2d at 964. It is our determination that there is an incompatibility in the functions of the offices of mayor and judge which prevents one person acting in both capacities. The test of incompatibility involves a determination of, whether there is some inherent inconsistency in the nature of the duties of the two offices, so that both cannot be administered by the same person.
We do not intend to imply or express an opinion that these mayor judges have ever done other than honorable service in this dual capacity. This probably has been a thankless job without reimbursement, and these judges should be commended for their work.
In the case sub judice, the projected budget for Plantersville, presented at the tribunal hearing, showed that fines comprised the third largest source of revenue. These fines would obviously be assessed by Mayor Judge W.T. Grant. Our concern is that we remove all appearance of the propriety of a chief *764 executive of a municipality also presiding over a potential source of revenue for his city. It is apparent that there will be instances where there will be conflicts between the municipal judge, as a member of the judiciary, and the mayor, as a municipal officer. No person standing on the other side of the bar of justice should ever be concerned that the person deciding his fate and levying his fine also is directly responsible for the financial well being of the beneficiary of the fines collected.

CONCLUSION
Today this Court determines that § 21-23-5 shall have no future application in this State as it is contrary to the proper functioning of the judiciary. There is a conflict of interest in a single person serving both as mayor and as judge and that conflict has the potential for bringing the judicial office into disrepute. Our decision is not based on a determination that the statute is unconstitutional under the separation of powers doctrine. We accept the recommendation of the Commission and order that the municipal judges be suspended according to statute and the rules of the Commission.
RECOMMENDATION OF MISSISSIPPI JUDICIAL PERFORMANCE COMMISSION IS AFFIRMED. W.T. GRANT, ERNEST HERRING, JOHN BEAMON AND HAROLD WARD, SR. ARE HEREBY SUSPENDED ACCORDING TO STATUTE AND THE RULE OF THE COMMISSION.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., concurs in results only.
McRAE, J., dissents with written opinion.
McRAE, Justice, dissenting:
Without authority, the Mississippi Judicial Performance Commission found that Miss. Code Ann. § 21-23-5 (1972) violated Article I, Sections 1 & 2 of the Mississippi Constitution of 1890, and its interpretation is the sole basis recommended to this Court for the removal of the four responding judges from office. The majority states that it cannot determine if Miss. Code Ann. § 21-23-5 (1972) is unconstitutional pursuant to the above sections of the Constitution but holds that the statute will have no future application. What is the basis for removal of the judges or how can these respondents be removed from office, particularly when they were given no notice to defend themselves before this Court?
I cannot join the majority opinion which overlooks the fact that the Mississippi Judicial Performance Commission acted beyond its authority. The Commission derives its limited powers from Article VI, Section 177A of the Mississippi Constitution of 1890, and its circumscribed authority is to investigate the conduct of a judge and recommend to the Supreme Court of Mississippi to "remove from office, suspend, fine or publicly censure or reprimand" a justice court judge or judge of this state. It does not have the power, outside of recommendation, to judicially determine whether a statute is constitutional; only courts of competent jurisdiction can determine whether a statute is constitutional. The majority's opinion, however, de facto holds that the Commission now has this power, and clearly it does not.
Furthermore, the majority opinion affirms the Commission's findings although no notice of appeal was given to the four respondents, defendants before the Commission, by the Commission or the clerk of the court. The record does not indicate that Grant or the three other respondents were ever served notice of the Commission's findings and notice of its recommendation to this Court, and, therefore, this cause is not properly before this Court. The majority allows the Commission to violate all remnants of due process when it determined that Miss. Code Ann. § 21-23-5 (1972) was "unconstitutional" before any defendant was present to argue the opposite. It is for these reasons and others following that I must dissent.
In an ex parte proceeding on or before March 17, 1992, the Commission, in a high-handed fashion and without giving notice or due process to any municipal judge, determined that Miss. Code Ann. § 21-23-5 (1972) was unconstitutional. The Commission *765 wrote to every mayor/judge ordering them to resign or to face the alternative, removal by the Commission. This letter reeks with disparity and characterizes the arbitrary and capricious manner of the Commission as it had already decided the fate of all sixty-nine judges without any due process. The letter states as follows:
March 17, 1992
TO ALL MAYORS SERVING AS MUNICIPAL JUDGE:
The Mississippi Commission on Judicial Performance has determined that a mayor serving as municipal judge, pursuant to Mississippi Code Annotated Section 21-23-5, violates Sections 1 and 2 of the Mississippi Constitution of 1890, as the office of mayor is in the executive branch of government and the office of municipal judge is in the judicial branch. The Commission has further determined that a mayor serving as municipal judge violates Canon 3C(1)(d)(i) of the Code of Judicial Conduct of Mississippi Judges.
The Commission is submitting this letter to mayors who serve as municipal judges to advise them of the Commission's findings. The letter will further serve as notice that the Commission intends, at its April meeting, to file a formal complaint against any mayor who is serving as municipal judge at that time. In addition, the Commission will consider recommending to the Mississippi Supreme Court that any such judge be suspended from office pending the outcome of the formal complaint.
The Commission also requests that you notify the Commission office if you intend to continue serving in that capacity. Please reply on or before April 7, 1992.
If you have any questions please call upon me or the Commission's Executive Director, Brant Brantley, at your convenience.
 Very truly yours,
 William M. Bost, Jr.
 Chairman
A formal complaint was filed on May 14, 1992, and by the time a Commission hearing was held on October 8, 1992, most of the mayors had already resigned as municipal judges. At least four mayor/judges opposed the Commission's interpretation of Miss. Code Ann. § 21-23-5 (1972). One mayor/judge, W.T. Grant, appeared at the hearing while the other three respondents filed answers challenging the authority of the Commission to declare a statute unconstitutional. From that hearing, the Commission issued its recommendation finding that § 21-23-5 was unconstitutional as it violated Article I, Sections 1 & 2 of the Mississippi Constitution of 1890 and the due process clause of the United States Constitution. The Commission further found:
[A]ny mayor or alderman who sits as a municipal judge violates the Canons of the Code of Judicial Conduct of Judges of Mississippi. The Commission therefore recommends that the [r]espondents ... be suspended from holding the office as municipal court judge for as long as they may be mayor or alderman of their respective cities, and further, that the Mississippi Code Annotated § 21-23-5 ... to be unconstitutional.
The Commission filed its inquiry and asked this Court to determine, in effect, an advisory matter, that is, whether its interpretation of the constitutionality of the pertinent code section was correct and to remove the four respondents from their respective positions as municipal judges. The majority fell for this hook, line and sinker.
First, the Commission has no authority under Article VI, Section 177A of Mississippi's Constitution of 1890[1] to determine the *766 constitutionality of a statute. The Commission is not a judicial body. Its only power is simply to investigate and recommend to the Supreme Court that the Court:
remove from office, suspend, fine or publicly censure or reprimand any justice or judge of this state for: (a) actual conviction of a felony in a court other than a court of the State of Mississippi; (b) willful misconduct in office; (c) willful and persistent failure to perform his duties; (d) habitual intemperance in the use of alcohol or other drugs; or (e) conduct prejudicial to the administration of justice which brings the judicial office into disrepute ...
Miss. Const. art. VI, § 177A. At best, the Commission might be seen as a quasijudicial body; but in no way is the Commission a court. Its powers are limited to only investigating the conduct of judges.
The Commission, in addition to not having the authority to do what it did, afforded no due process to the sixty-nine judges. The March 17, 1992 letter clearly shows that the Commission had ex parte "determined" that the statute was unconstitutional and the only remaining matter was to resign or be forced out of office. This occurred before a complaint was even filed and before any judge could contest the decision! The majority points out that in [Mississippi Judicial Performance] Commission v. Thomas, 549 So.2d 962 (Miss. 1989) the Commission requested that this Court determine that Miss. Code Ann. § 21-23-5 (1972) was unconstitutional, and this Court refused to address the matter. Examining Thomas reveals that the Commission took an inconsistent view and argued that the mayor in question may serve as a municipal judge. Thomas, 549 So.2d at 964. The Commission, in effect, took matters in its own hands and attempted to expand our Thomas decision by abolishing the entire mayor/judge court system in the letter of March 17, 1992 which stated that the statute was unconstitutional.
Secondly, no notice was apparently given to the four respondents, particularly Grant, of an "appeal" to this Court, and thus, they are not properly before this Court. Query: How was Grant ever suppose to appeal the matter when he was never given notice? Even more, when the Commission asked this Court to expedite this matter, Executive Director Brantley, for and on the behalf of the Commission, gave no notice to any of the four responding parties of the motion. In his certificate of service, he stated only the Attorney General and William Bost, Chairman of the Commission, were afforded notice. Obviously, Attorney General Mike Moore was led to believe that the only litigant involved in this "appeal" was the Commission since in his certificate of service he sent only the Commission a copy of his amicus brief.
The Commission's brief provides another argument against the majority in that the brief requests that this Court suspend all four judges named in the caption. The brief names the four judges in question the "respondents." When it appears in the record that no notice was given to the respondents, a red flag should immediately go up and an alarm should ring. It is this Court's duty to jealously ascertain whether all sides are represented in a matter before the Court and are afforded due process. In the record exists a letter from Luther Brantley, Executive Director of the Mississippi Commission on Judicial Performance, to the Mississippi Supreme Court Clerk which enclosed the clerk's papers, transcript and exhibits of the October 8, 1992 hearing along with copies of the Commission's findings of fact and recommendation. The letter indicates that Grant was sent a copy of the letter, but that is all. There is no indication in the record that Grant or the other three respondents were properly noticed or even sent a copy of the Commission's findings of fact and recommendation.[2] No notice was sent to Grant and the others outside this letter.
*767 Rule 10(A) of the Rules of the Mississippi Commission on Judicial Performance provides that "[t]he Commission shall promptly file the record, its findings and recommendations, and any dissents with the Clerk of the Supreme Court and shall immediately serve copies thereof upon the judge [in question]." Rule 10(B) of the Rules of the Mississippi Commission on Judicial Performance then enunciates that "[t]he Rules of the Supreme Court shall be applicable for all Commission proceedings before the Supreme Court, except as otherwise provided in these rules." Not only did the Commission fail to furnish Grant or the other three proper notice of appeal pursuant to Rule 10(A) of the Rules of the Mississippi Commission on Judicial Performance, but, moreover, no one notified Grant or the others, as they do any other appellee parties on appeal pursuant to Rule 3(d)[3] of the Supreme Court Rules, that his time to file his brief had commenced. It should be noted that the Clerk of this Court, in accordance with the laws of Mississippi, gave notice only to the persons that Executive Director Brantley stated were parties to this case who were the Attorney General and the Commission. Pure and simple, at this time, this Court has no in personam jurisdiction over the four respondents in this cause. A correlation exists between the case sub judice and Altamil Corp. v. Miss. State Highway Commission, 391 So.2d 1013, 1014-15 (Miss. 1980). In Altamil, this Court held that where the Commission did not timely perfect a direct appeal against one of several defendants, the defendant was not properly before this Court. Altamil, 391 So.2d at 1015. The Mississippi Judicial Performance Commission should be treated no differently than any other litigant before this Court, and because it did not provide any of the respondents notice of filing its recommendation to this Court, they are not properly before us now.
An apt analogy can be made with the Complaint Tribunal of the Mississippi Bar. Both the Commission and Complaint Tribunal were established to self-regulate and preserve the integrity of the legal profession. The Supreme Court, in both cases, has exclusive and inherent jurisdiction of matters pertaining to attorney and judicial discipline. In enforcing the rules of attorney discipline, a Complaint Tribunal exists to hear and determine formal complaints filed against attorneys of this State. In taking an appeal to the Supreme Court, the Comment to Rule 9 of the Rules of Discipline for the Mississippi Bar states:
Any notice of appeal shall be filed and served on all opposing counsel within thirty (30) days of the date on which the Tribunal's judgment was filed with the Clerk of the [Supreme] Court and by paying within that time, all sums assessed as costs and expenses. Failure to give notice within that time or failure to pay the costs and expenses assessed, or failure to pay any costs due the Clerk of Court, shall be grounds for dismissal, notice and payment within the time provided being jurisdictional for any appeal. Otherwise, appeals shall be taken as in other civil cases.
Discipline for the Mississippi Bar Rule 9. (Emphasis added.)
Lastly and unfortunately, the Executive Director of the Judicial Performance Commission is afforded far too much power. Executive Director Luther T. Brantley approves each commissioner's expenses for their hearings and meetings and acts as the Commission's prosecuting attorney, its Executive Director and its legal advisor. In addition to being the prosecuting attorney and the attorney for the Commission, Brantley still found the time to act as clerk of the Commission as he certified the record in this case. It seems rather difficult for an attorney with such powers to lose an argument before his Commission and even before this Court. In addition, the executive director was indicated in the March 17, 1992 letter as *768 the officer to contact if any of the judges had any questions or needed advice.[4]
The majority does not hold that Miss. Code Ann. § 21-23-5 (1972) is unconstitutional under Article I, Sections 1 & 2 of the Mississippi Constitution of 1890 but rather states the statute will be considered as having no future application. Is the majority going to ignore Article VI, Section 172 of the Mississippi Constitution of 1890 which gives the authority for municipal courts?[5] Perhaps a mayor does vacate his office when he acts as a judge, but, nevertheless, this issue is not properly before us. What is clear is that the Commission stated Miss. Code Ann. § 21-23-5 (1972) was unconstitutional, and that is the sole and only basis it used to force some mayor/judges to resign from office and recommend to this Court the removal of the four responding judges, W.T. Grant, Ernest Herring, John Beamon and Harold Ward, Sr. What is the basis for the majority's removal?
We should do no less than dismiss this matter sua sponte and advise the Commission that it is not a court but merely an investigative body without the power to determine matters in advance forcing judges to resign without a proper hearing. I, accordingly, dissent.
NOTES
[1] Of interest, Article VI, Section 177A of the Mississippi Constitution of 1890 gives the authority to the Judicial Performance Commission to investigate the conduct of judges and recommend to this Court sanctions and suspensions. This Commission has never been approved by the United States Department of Justice as ordered by Section 5 of the Voting Rights Act of 1965 and may very well be illegal. The Voting Rights Act found at 42 U.S.C. § 1973b requires approval by the Justice Department before activating any state-enacted laws which alter the right of persons to seek or obtain elective office. City of Rome v. United States, 446 U.S. 156, 160-61, 100 S.Ct. 1548, 1553-54, 64 L.Ed.2d 119, 129 (1980). Since Article VI, Section 177A of the Mississippi Constitution personally affects the rights of elected mayors who also serve as municipal judges, it is subject to the Voting Rights Act of 1965.
[2] The only indicia of any minute awareness Grant might have had was in an amended certificate dated January 13, 1993, wherein Executive Director Brantley stated he mailed a copy of the Commission's brief to Mayor W.T. Grant as well as the other named respondents. This, however, does not constitute notice as required by our law.
[3] Mississippi Supreme Court Rule 3(d) provides in part that "the clerk ... shall serve notice of the filing of a notice of appeal by mailing a copy of the notice to counsel of record for each party other than the appellant, or, if a party is not represented by counsel, to the last known address of that party, and to the court reporter ..."
[4] This Court has reprimanded lawyers who give advice to adverse parties. Attorney Q v. Mississippi State Bar, 587 So.2d 228, 232 (Miss. 1991).
[5] "The legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient." Miss. Const. art. VI, § 172.