# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01266-SCT

*DAVID W. MYERS*

*v.*

*CITY OF McCOMB*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2005 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIE JAMES PERKINS |
| | CARLOS DIALLO PALMER |
| | MARK C. BAKER, JR. |
| ATTORNEY FOR APPELLEE: | NORMAN B. GILLIS, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/05/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

*"If men were angels, no government would be necessary."*[1]

¶1.     The City of McComb ("City"), by and through the Board of Mayor and Selectmen of McComb, filed an action in the Circuit Court of Pike County seeking a declaratory judgment for the removal of David W. Myers from the Board of Mayor and Selectmen, for simultaneously serving in the State Legislature, in violation of Article 1, Sections 1 and 2 of the Mississippi Constitution.    Myers removed the action to the United States District Court

---

[1]The Federalist No. 51, at 349 (James Madison) (Jacob E. Cooke ed. 1961).

for the Southern District of Mississippi under 28 U.S.C. Sections 1331, 1441, and 1443; Section 5 of the Voting Rights Act of 1965, 42 U.S.C. Section 1973c; and the Fourteenth Amendment to the United States Constitution. The district court entered summary judgment in favor of Myers.

¶2.     The City appealed the ruling to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit held "federal question jurisdiction was unavailable here and this case was improperly removed from state court." *City of McComb v. Myers*, 122 Fed. Appx. 698, 699 (5th Cir. 2004) (per curiam). The Fifth Circuit vacated the judgment and remanded the case to the district court with instructions to remand to the Circuit Court of Pike County. *Id*. at 698.[2] The parties then filed competing motions for summary judgment in the circuit court. After considering the motions and filings of both parties, the circuit court issued an order denying Myers's motion and granting summary judgment in favor of the City and declared Myers's office as City Selectman to be vacant. Myers appealed to this Court.

¶3.     Subsequent to appealing the circuit court's decision to this Court, Myers filed a separate suit in the United States District Court for the Southern District of Mississippi, claiming once again, inter alia, an alleged violation of Section 5 of the Voting Rights Act, 42 U.S.C. Section 1973c, to be discussed *infra*.

---

[2]The per curiam opinion held, "it is clear that McComb's cause of action deals exclusively with state law. This is how the district court viewed the dispute, rendering a judgment based solely on state law issues." 122 Fed. Appx. at 699. The Fifth Circuit is to be commended for recognizing that federal law was not implicated and refusing to allow intrusion upon a pure state court controversy.

¶4. Finding no error in the granting of summary judgment by the Circuit Court of Pike County, this Court affirms.

## FACTS

¶5. In October 1991, Myers was elected to serve as a Selectman on the City's Board of Mayor and Selectmen. Subsequently, Myers was elected to the Mississippi House of Representatives, with initial service beginning in January 1996. Myers has consecutively and simultaneously served in both offices since.

¶6. In 1996, the City unanimously approved a proposal to impose a tax on gross receipts collected by hotels and motels within the municipality. Initially, the language of this proposal provided that the entirety of the tax would be applied to economic improvement and development of the City. However, while the proposal awaited approval in the State Legislature, a conflict emerged between Myers, the Mayor and other Selectmen. After the proposal was presented to the State Senate for approval, Myers sought an amendment to allocate ten percent (10%) of the tax collections to the Martin Luther King Center and the Summit Street area of the City. The Board rejected Myers's proposed amendment. Myers then refused to support the proposal as originally submitted. As the proposal lacked unanimous Board approval, it was never adopted. Myers also subsequently refused to support similar proposals.

¶7. In 2002, the Board, aggrieved over the loss of potential tax revenue, which it attributed to Myers, voted to amend the City's private charter to promote ethical conduct and prevent selectmen from serving in the State Legislature. Myers, who serves as Vice Chairman of the House Municipalities Committee, thwarted the Board's vote by supporting successful

3

legislation which required the City to obtain legislative approval before amending its charter. Accordingly, neither the Attorney General nor the Governor approved the amendment to the City's charter due to its conflict with Section 3 of 2002 Regular Session Senate Bill 2383.[3]

¶8.     Thereafter, the City filed its complaint in the Circuit Court of Pike County seeking a declaratory judgment for Myers's removal from the Board. The circuit court eventually heard competing motions for summary judgment from Myers and the City, and after due consideration issued its findings and signed an order granting the City's motion for summary judgment. Specifically, the circuit court found a violation of both the common law doctrine of "incompatible offices" and Article 1, Sections 1 and 2 of the Mississippi Constitution. The circuit court held, "[u]nder both doctrines, the acceptance by Myers of the office of Legislator, did of itself, and at once, vacate the office held by Myers on the McComb Board of Mayor and Selectmen."

## STANDARD OF REVIEW

¶9.     Myers argues that the circuit court decided genuine issues of material fact without conducting a trial and erred in granting the City summary judgment. However, this argument is inconsistent with the pleadings filed and the stance Myers has taken throughout this controversy. In the U.S. district court, Myers filed and prevailed on a motion for summary judgment. In the circuit court, Myers filed a motion for summary judgment and claimed "a review of the pleadings and documents clearly reveals that there is no genuine issue of material fact in this lawsuit." This argument is without merit.

---

[3]Senate Bill 2383 is now Miss. Code Ann. Section 21-15-2.

¶10. The record contains substantial and credible evidence that the position of City Selectman in McComb requires the performance of more than incidental dual functions, legislative and executive. The Board of Mayor and Selectmen of McComb operates under a "weak mayor/strong council" form of government, where lines are considerably less distinct between the legislative and executive branches. *See **Jordan v. Smith***, 669 So. 2d 752, 759 (Miss. 1996) (Lee, C.J., dissenting).[4] The City charter authorizes, and the minutes of the Board meetings demonstrate, multiple instances where the Board appoints persons to executive positions to carry out the duties of the City. The Board appoints the city attorney, municipal judges, the prosecuting and defending attorneys, police sergeants, and members of the airport board. *See **Alexander v. State ex rel. Allain***, 441 So. 2d 1329, 1338 (Miss. 1983) (the executive branch "appoint[s] the agents charged with the duty of [the] enforcement [of laws].").

¶11. Article 1, Section 2 of the Mississippi Constitution prohibits the exercise of "*any power*" belonging to one branch by a member of another branch. Miss. Const. art. 1, § 2 (emphasis added). This Court has stated that "no . . . member of the legislative branch may

_____

[4]Compare to other forms of local government, such as a mayor-council form of government, where the mayor is apportioned distinct executive duty, *see* Miss. Code Ann. Section 21-8-15, and the council is apportioned distinct legislative duty, *see* Miss. Code Ann. Section 21-8-9.

There are six forms for municipalities to operate under in Mississippi: (1) Miss. Code Ann. Section 21-3-1 *et seq*. (Code Charters); (2) Miss. Code Ann. Section 21-5-1 *et seq*. (Commission Form); (3) Miss. Code Ann. Section 21-7-1 *et seq*. (Council Form); (4) Miss. Code Ann. Section 21-8-1 *et seq*. (Mayor/Council); (5) Miss. Code Ann. Section 21-9-1 *et seq*. (Council/Manager); and (6) Miss. Code Ann. Section 21-1-9 (Private Charters) ("All other municipalities shall be designated as having 'Private Charters,' or such other form of government as may be created by the legislature, such cities to be designated by the act creating such special form of government.").

consistent with the constitution exercise *any powers* essentially executive in nature." ***Alexander***, 441 So. 2d at 1339 (emphasis added). As the exercise of executive power is clearly present, we are left only with questions of law remaining for this Court to decide.

¶12. This Court will review errors of law, including summary judgments and motions to dismiss, de novo. *See **Bd. of Educ. v. Warner***, 853 So. 2d 1159, 1162 (Miss. 2003). The standard of review we will apply in the case at bar is de novo.

## ANALYSIS

### *I. Constitutionality*

¶13. "If men were angels, no government would be necessary." The Federalist No. 51, at 349 (James Madison). However, "[i]n framing a government which is to be administered by men over men, the great difficulty lies in this: You must first enable the government to controul the governed; and in the next place, oblige it to controul itself." *Id*. at 351. Therefore, "[*t*]*he accumulation of* all *powers legislative, executive* and judiciary in the same hands, whether of *one*, a few or many, and whether hereditary, self-appointed, *or elective*, may justly be pronounced the very definition of tyranny." The Federalist No. 47, at 324 (James Madison) (emphasis added). "The preservation of liberty requires, that the three great departments of power should be separate and distinct." *Id*. *See also* 12 C.J. § 234, n.96 (1917) (quoting Montesquieu) ("When the legislative and executive powers are united in the same person, or the same body of magistrates, there can be no liberty, because apprehensions may arise, lest the same monarch or senate should enact tyrannical laws, to execute them in a tyrannical manner.").

¶14. "An *elective* despotism was not the government we fought for, but one which should not only be founded on free principles, but in which the powers of government should be so divided and balanced among several bodies of magistracy, as that no one could transcend their legal limits, without being effectually checked and restrained by the others. For this reason that convention which passed the ordinance of government, laid its foundation on this basis, that the legislative, executive, and judiciary departments should be *separate and distinct*, *so that no person should exercise the powers of more than one of them at the same time.*" **Book v. State Office Bldg. Comm'n**, 238 Ind. 120, 161, 149 N.E.2d 273, 294 (1958) (quoting Thomas Jefferson in his "Notes on the State of Virginia") (emphasis added).

¶15. The United States Supreme Court has forcefully adopted these same principles, declaring:

> [t]his separation is *not merely a matter of convenience or of governmental mechanism. Its object is basic and vital ...* namely, to preclude a commingling of these essentially different powers of government in the same hands. ... If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows ... that each department should be kept completely independent of the others ... .

**O'Donoghue v. United States**, 289 U.S. 516, 530, 53 S. Ct. 740, 743, 77 L. Ed. 1356, 1360 (1933) (emphasis added).

¶16. This Court has likewise concluded that:

> [a] part of the American system, impressed alike upon the people and the states, is the distribution of powers into legislative, executive and judicial. ... With the adoption of the Federal constitution, arbitrary power, which had theretofore defied the rights of persons and property, was denied an existence, whether in national or state governments, or with the people in their sovereign capacity; and there was ordained a sacred and inviolable separation of legislative, executive and judicial authority. These principles are with us, fundamental, and cannot be

7

disregarded ... any more than the legislative, executive or judicial departments of a government can exercise the powers of each other.

*Lawson v. Jeffries*, 47 Miss. 686, 702-03 (1873).

¶17.     As the crux of this controversy is the separation of governmental powers, we first examine the Constitution of this state and the pronouncements of this Court for guidance to resolve this dispute.   The *broad* issue before the Court is "whether Article I, Sections 1 and 2 should be interpreted faithfully to accord with its language or whether it should be interpreted loosely so that [projected] efficiency in government through permissive overlapping of departmental functions becomes paramount to the written word."   *Alexander*, 441 So. 2d at 1333.   The *narrow* issue arising from the record, and upon which the parties invite this Court's deliverance,  is whether Myers can simultaneously serve as both a Selectman for the City of McComb and a State Representative without violating Article 1,  Sections 1 and 2 of the Mississippi Constitution and the common law doctrine of "incompatible offices."

¶18.     This Court has previously declared:

> [t]he interpretation of the constitution becomes the duty of the judicial department when the meaning of that supreme document is put in issue. ... This coincides with the genesis federal case, *Marbury v. Madison*, 1 Cranch 137, 170, 2 L.Ed. 60 (1803), which held that congressional enactments contrary to the constitution are void, thus establishing the great difference in this nation's government from that of other nations. *See also*, *State v. Wood*, 187 So. 2d 820 (Miss. 1966).

> It is universally accepted that the highest judicial tribunal of a state is the paramount authority for the interpretation of that state's constitution, subject only to the Constitution of the United States.  In *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 613, 57 S.Ct. 549, 552, 81 L.Ed. 835, 840 (1937), Justice Cardozo for the United States Supreme Court stated: "*A judgment by the highest Court of a state as to the meaning and effect of its own constitution is decisive and controlling everywhere.*"

*Alexander*, 441 So. 2d at 1333 (emphasis added). We must also ensure that such interpretation does not violate the Constitution of the United States. *See id*.

¶19. Thus, we must determine if the Mississippi Constitution generally, and Article 1, Sections 1 and 2 specifically, control this dispute and are applicable to municipalities and the persons or collection of persons which compose same. This Court has answered the latter inquiry in the affirmative for at least a century. *See Lizano v. City of Pass Christian*, 96 Miss. 640, 50 So. 981, 982 (1910) (Section 175 of the Mississippi Constitution "applies to 'all public officers,' and the *city* marshal is certainly a 'public officer,' within the meaning of the Constitution."); *State v. Armstrong*, 91 Miss. 513, 44 So. 809, 810 (1907) (justice of the peace, a county judicial office, and mayor, a *municipal* executive office, are "incompatible, and for that reason, and also under the constitutional provision [Article 1, Section 2], the action of [Armstrong] in accepting the office of mayor vacated that of justice of the peace."); *Kiersky v. Kelly*, 80 Miss. 803, 31 So. 901 (1902) (Section 266 of the Mississippi Constitution applies to the office of *city* assessor). As recently as 1984, this Court again made it abundantly clear that Sections 1 and 2 are to be applied to municipalities and the persons or collection of persons which compose same. *See In re Anderson*, 447 So. 2d 1275, 1277 (Miss. 1984) (*city* policeman and justice court judge). Accordingly, we expressly overrule any language in prior opinions *only* to the extent that they state or suggest otherwise, including *In re Grant*, 631 So. 2d 758 (Miss. 1994), *Jordan*, 669 So. 2d at 752 (plurality opinion), and *Tisdale v. Clay*, 728 So. 2d 1084 (Miss. 1998).[5]

---

[5]The efforts by prior Justices to *abandon* the idea that the constitutional doctrine of separation of powers applies to local government serves to confirm its existence. Indeed, the

9

¶20.   "[T]here is no natural law of separation of powers.   Rather, the powers of government are separate only insofar as the Constitution makes them separate."  ***Dye v. State ex rel. Hale***, 507 So. 2d 332, 346 (Miss. 1987).  Sections 1 and 2 state:

> Section 1.   The powers of the government of the State of Mississippi shall be divided into *three separate departments*, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.

> Section 2.   *No* person or collection of persons, being one or belonging to *one* of these departments, shall exercise *any* power properly belonging to *either of the others*.   The acceptance of an office in either of said departments shall, of itself, and at once, *vacate any and all* offices held by the person so accepting in either of the other departments.

Miss. Const. art. 1, Sections 1 & 2 (emphasis added).   Section 2 is composed of two distinct clauses which require separate inquiry.   If the inquiry commingles the two clauses, it confuses the issues and destroys the requisite separate analysis of each clause.   Thus, the first inquiry pertains only to sentence one of Section 2, "[n]o person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others."[6]

---

call for abandonment is a tacit acknowledgment of this truth, for one cannot abandon that which does not exist.   In ***Ball v. Fitzpatrick***, the concurring opinion by a respected former jurist mistakenly provided that "[t]he only case where the doctrine has actually been applied at the local level is in ***In re Anderson*** ... ."  602 So. 2d 873, 877 (Miss. 1992) (Banks, J., concurring, joined by Robertson, J.).   Additionally, ***Lizano***, ***Armstrong***, ***Kiersky***, and ***Anderson***, all refute the *ipse dixit* in the subsequent ***Jordan*** plurality opinion, relied upon by both Myers and the U.S. district court in granting summary judgment in favor of Myers, which only four years after ***Ball*** declared, "th[e] dissent does not cite nor has the writer found an instance in which the constitutional doctrine of separation of powers has ever been applied to municipal government." 669 So. 2d at 758 n.4.

[6]This Court has not interpreted this provision to prohibit the exercise of power related to incidental functions.   *See **Armstrong**,* 44 So. at 810 (finding "[a]ll the judicial powers"

¶21. The second requisite inquiry pertains to sentence two of Section 2, "[t]he acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments." The crux of that determination concerns whether the second office is in a separate department as defined by the constitution, thereby defeating the checks and balances intended by the Framers and creating an opportunity for abuse of power.

¶22. It should be noted that "the constitution is presumed capable of ordering human affairs decades beyond the time of ratification, under circumstances beyond the prescience of the draftsmen." *Alexander*, 441 So. 2d at 1334 (citing *Albritton v. City of Winona*, 181 Miss. 75, 102-03, 178 So. 799, 806 (1938)). In interpreting the Mississippi Constitution "we seek the intent of the draftsmen, keeping in mind, 'the object desired to be accomplished and the evils sought to be prevented or remedied.'" *Id*. at 1335 (quoting *Moore v. Gen. Motors Acceptance Corp.*, 155 Miss. 818, 822, 125 So. 411, 412 (1930)). By ratification of the Mississippi Constitution of 1890:

> separation of powers was no longer a mere political theory from the untested works of Locke and Montesquieu. There was available years of experience by the federal sovereign whose constitution implied but did not express separation of powers. Additionally, there was the example of other states of the union, each of which had divided its powers of government into three branches.

*Id*. *See also* 12 C.J. at § 234 ("except in a few instances, all the American state constitutions contain a provision for the separation of governmental powers into legislative, executive, and

---

which a mayor "may, as an ex officio justice of the peace, exercise, are incidental, and not primary."). Accordingly, this Court is not declaring a prohibition for an individual in one department from performing incidental functions normally associated with a separate department, as that issue was raised by neither party in the case sub judice.

11

judicial. Many of these provide also that neither branch may exercise powers belonging to the other ... .”). More significantly, the Mississippi Constitution of 1890 “manifests the primacy of separation of powers in the state government[,]” *Alexander*, 441 So. 2d at 335, insofar as it provides, for the first time, “a penalty, automatic and severe, for those who violate [the] provisions [of Article 1, Sections 1 and 2].” *Id*. This was in contrast to the language of the Mississippi Constitutions of 1817, 1832, and 1869, all of which contained “except as otherwise provided” language. *See id*.

¶23.    The Mississippi Constitution is a contract between the government and the people of this State, and is instituted solely for the good of the whole. *See* Miss. Const. art. 3, Section 5 (“[a]ll political power is vested in, and derived from, the people; all government originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.”). In short, it prevents the government from exercising powers inimical to the public good. Therefore, for there to be an exception to the plain language of Article 1, Sections 1 and 2, it must be part of the constitutional compact. For example, the lieutenant governor is constitutionally granted executive and legislative powers by the Mississippi Constitution, *see* Miss. Const. art. 5, Section 129; *Kirksey v. Dye*, 564 So. 2d 1333, 1335-36 (Miss. 1990). There is no similar constitutional exception in which Myers may seek refuge. This view of separation of powers is neither new nor novel, as it was addressed in a 1923 opinion. *See* *Jackson County v. Neville*, 131 Miss. 599, 95 So. 626, 628 (1923). The *Neville* Court cited a 1919 edition of Corpus Juris for the proposition that “complete separation of the powers of government into legislative, judicial, and executive so that no part of the power exercised by one department can be exercised by either of the others was never intended by the makers of

12

our Constitution ... and that in practical operation each of the three departments necessarily exercise some power which is not strictly within its province." *Id*. (citing 12 C.J. at § 234-42). *See also* Dissenting Opinion. However, the dissent fails to address the legal premise upon which the quote was based or the example used by the *Neville* Court, which required a constitutional mandate, i.e., the veto power of the executive under the United States Constitution. *See id*; U.S. Const. art. I, § 7, cl. 2.

¶24. Here, Myers serves in one purely legislative function, i.e., State Representative, and in one dual (legislative and executive) function, i.e., Selectman for the City of McComb. Myers's quandary is illustrated by reference to the legislative power over appropriations to the City in his role as a State Representative, and his combined legislative and executive powers over the direction of those appropriated funds in his role as Selectman for the City of McComb. "[N]o person a member of the legislative branch may consistent with the constitution exercise any powers essentially executive in nature." *Alexander*, 441 So. 2d at 1339. Clearly, Myers's dual legislative and executive functions, while serving in separately accepted offices, conflicts with the mandate of Article 1, Section 2 ("[t]he *acceptance of an office* in either of said department shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.").

¶25. Moreover, as a State Representative, Myers is in a position of higher authority with respect to the City. *See* The Federalist No. 39, at 256-57 (when central and local authority conflict, central authority trumps local authority). "In republican government the legislative authority, necessarily, predominates." The Federalist No. 51, at 350 (James Madison). The basic reason is that "the legislative department alone has access to the pockets of the people,

13

and has in some Constitutions full discretion, and in all, a prevailing influence over the pecuniary rewards of those who fill the other departments, a dependence is thus created in the latter, which gives still greater facility to encroachments of the former." The Federalist No. 48, at 334 (James Madison). In other words, from the legislative power of the purse flows the prevailing power of the legislature. *See **Colbert v. State***, 86 Miss. 769, 39 So. 65, 66 (1905) ("[u]nder all constitutional governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function. Indeed, it is the supreme legislative prerogative, indispensable to the independence and integrity of the Legislature ... .").

## II. Incompatible Offices

¶26. Furthermore, "[n]o man can serve two masters. Either he will hate the one and love the other, or he will be devoted to the one and despise the other." *Matthew* 6:24 (New International Version). Insofar as the common law is not directly in conflict with, or repugnant to, the Mississippi Constitution or the statutes of this state "they co-exist and will be given effect." ***Sanders v. Neely***, 197 Miss. 66, 82, 19 So. 2d 424, 426 (1944). The common law doctrine of incompatible offices has not been abrogated by either and is, therefore, applicable.

¶27. Myers's performance of such dual service presents conflicts in attempting to serve the interests of the State (as a State Representative), the interests of the City (as a Selectman for the City of McComb), and the interests of separate constituencies. That which is always good for the City is not necessarily always beneficial to the State of Mississippi, and vice versa. The City has an interest in receiving large appropriations from the State. However, the best interests of the State may not be well served if excessive appropriations to the City dominated

14

legislative appropriations. Various constituent groups will inevitably have competing interests. In serving in these dual positions, Myers's ability to faithfully discharge his duties as a legislator is subject to compromise, by virtue of competing interests amongst the positions. *See Ball*, 602 So. 2d at 879 (McRae, J., dissenting) ("conflicting allegiances create a situation where one branch of government is in a position to impermissibly influence the workings of another branch."). Competing duties naturally create "incompatible office" issues as "there is . . . inherent inconsistency in the nature of the duties of the two offices, so that both cannot be administered by the same person." *In re Grant*, 631 So. 2d at 763.

## CONCLUSION

¶28. Sections 1 and 2 exist to preclude a commingling of different powers in the same hands and the attendant improper concentration of power. *See O'Donoghue*, 289 U.S. at 530. Applying Sections 1 and 2, the constitutionally-mandated separation of powers are endangered by the dual roles undertaken by Myers. We have not so learned the law as to ignore the Mississippi Constitution. *See Colbert*, 39 So. at 68 ("[w]e will not be deterred from declaring these principles because of any administrative construction and practice to the contrary. If such practice has grown up under a mistaken conception of the law, it should be at once abandoned. No false construction of the Constitution by any administrative department, however long continued, can ever ripen into law."). Under Article 1, Sections 1 and 2, Myers is placed squarely on the horns of a dilemma, a person charged with legislative functions as a State Representative, while simultaneously engaging in a mixed legislative/executive function as a Selectman for the City of McComb. Myers's dual roles skew the system of checks and balances, risking concentration of control, a result Madison warned of in The Federalist.

15

Conflicts most assuredly will arise, as the facts of this case clearly demonstrate. As "no man can serve two masters," in such dual positions, Myers is faced with divided and conflicting loyalties. The people of this State deserve better. *See Alexander*, 441 So. 2d at 1347 (quoting *Miss. State Tax Comm'n v. Brown*, 188 Miss. 483, 526, 195 So. 465, 470 (1940)) ("[t]he citizens of Mississippi expect that the legislators will be true to their oaths faithfully to uphold and defend the constitution as interpreted by this Court. For 'every person and every officer is obliged to accept the decision of the highest court as binding and their personal judgment must yield to the judicial declaration.'").

¶29. For the above and foregoing reasons, the circuit court did not err in finding Myers's dual service violates Article 1, Sections 1 and 2 of the Mississippi Constitution and the doctrine of incompatible offices. For the outcome to be changed would require an amendment to the Mississippi Constitution, exempting dual service under Article 1, Sections 1 and 2. But lest and except it is amended, the will of the people is found in the plain language of Article 1, Sections 1 and 2 of the Mississippi Constitution of 1890. Therefore, the judgment of the circuit court is affirmed.

*Voting Rights Act* [7]

¶30. The Voting Rights Act "implemented Congress' firm intention to rid the country of racial discrimination in voting." *Allen v. State Bd. of Elections*, 393 U.S. 544, 548, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). In *Hathorn v. Lovorn*, 457 U.S. 255, 269, 102 S.Ct. 2421, 72

---

[7]Myers has sought protection under the Voting Rights Act throughout this controversy, in both federal and state court. Myers first raised the issue in his answer to the circuit court action and addressed Voting Rights Act ramifications in his brief before this Court.

L.Ed.2d 824 (1982), this Court was directed by the United States Supreme Court to address the Voting Rights Act.

¶31. In the case sub judice, the three-judge U.S. district court enjoined the City's enforcement of the circuit court's judgment pending compliance with Section 5 of the Voting Rights Act, finding that "the decision effectuated a change in Mississippi law as it existed when the VRA became effective in 1964." In reaching that conclusion, the three-judge court relied upon *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), to support the injunction of state court proceedings. However, the three-judge court appropriately did *not* enjoin this appeal.

¶32. Ten years after *Mitchum*, the United States Supreme Court determined that the Mississippi Supreme Court was empowered to collaterally decide whether the Voting Rights Act is applicable to decrees and orders of this Court. *See Hathorn*, 457 U.S. at 269-70 ("When a party to a state proceeding asserts that § 5 renders the contemplated relief unenforceable ... the state court *must* examine the claim and refrain from ordering relief that would violate federal law."). In that examination, this Court is respectfully cognizant of its responsibility to ensure that its analysis and opinion do not result in ordering relief that would violate the Voting Rights Act. *See id*. at 266; *Stone v. Powell*, 428 U.S. 465, 494, n.35, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ("[s]tate courts, like federal courts, have a constitutional obligation ... to uphold federal law.").

¶33. Not only does this Court have the power to make this determination, it also has the duty to do so. *See Hathorn*, 457 U.S. at 269. "Recognition of a limited state power to address § 5 issues ... furthers the Act's ameliorative purposes by permitting additional tribunals to

17

enforce its commands." *Id*.  Myers asserts his removal from office, as required by the Mississippi Constitution, is unenforceable because of the Voting Rights Act.  Accordingly, before this Court renders judgment, it must ensure the resulting judgment is not violative of federal law.

¶34.    To require Section 5 preclearance, there effectively must be (1) a change to the law, (2) affecting voting, which is (3) "different from [the law] in force or effect on November 1, 1964."  *See* 42 U.S.C. Section 1973c.  The Mississippi Constitution of 1890 was "in force or effect" over 70 years prior to the Voting Rights Act of 1965, while the common law doctrine of incompatible offices is far older.  The decisions of this Court applying the separation of powers article of the 1890 Constitution to municipalities are over 100 years old.  Accordingly, there is no change in the law affecting voting which is different from November 1, 1964.[8] Moreover, there is no candidate qualification issue, as a Selectman for the City of McComb is free to seek a seat in the legislature and is not disqualified to run for the legislature. However, if victorious in obtaining a seat in the legislature, the Mississippi Constitution and accompanying case law require vacating the Selectman position.  Finally, the judgment of this Court will not negatively affect the racial composition of the Board, as the city district represented by Myers is 77.5% African-American.[9]  There will be no dilution of minority political power, voting strength, or voting rights.  In short, it "neither has the purpose nor will

---

[8]Unquestionably, the City's failed attempt to change its ordinances and charter, if approved, would have required Section 5 preclearance.

[9]Myers, in his position on the Board of Mayor and Selectmen, represents Ward 3.  Ward 3 is a 77.5% African-American voting majority district.

have the effect of denying or abridging the right to vote on account of race or color ... ." *Id*. The application of these principles is race-neutral.

¶35. This Court holds that the circuit court's judgment is affirmed and Myers shall vacate the office of Selectman for the City of McComb forthwith.

¶36.    **AFFIRMED**.

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J.  DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶37. With all due respect, the majority's legal analysis is seriously flawed.   The majority finds Myers in violation of the separation of powers doctrine by implicitly finding that a selectman (a city councilman) serves in the executive branch of government merely because the position entails some executive functions, despite this Court's prior recognition that our state's "code is replete with instances wherein governmental functions are merged at [the local] level." *Jordan v. Smith*, 669 So. 2d 752, 758 (Miss. 1996). *See also Tisdale v. Clay*, 728 So. 2d 1084, 1087 (Miss. 1998) (stating "local government has numerous positions and groups which consist of a mix of administrative and legislative characteristics."); *In re Grant*, 631 So. 2d 758, 763 (Miss. 1994) (finding no separation of powers violation in statute which authorized mayors of municipalities to also serve as municipal judges)[10]; *Jackson County v. Neville*, 131 Miss. 599, 625, 95 So. 626, 628 (1923) (noting "complete separation of the

---

[10]    The *Grant* Court did, however, exercise its supervisory authority over the state's courts and judicial officials to find that dual service as a mayor and judge violated Art. 6, § 177A of the Mississippi Constitution. *Grant*, 631 So. 2d at 763.

powers of government into legislative, judicial, and executive so that no part of the power exercised by one department can be exercised by either of the others was never intended by the makers of our Constitution . . . and that in practical operation each of the three departments necessarily exercise some power which is not strictly within its province."). Myers's executive duties as a selectman no more remove that office (or that of a city councilman or alderman under other statutory forms of municipal government) from the legislative branch of government than the lieutenant governor's legislative responsibilities remove him/her from the executive branch of government. *See Kirksey v. Dye*, 564 So. 2d 1333, 1335 (Miss. 1990) (noting that "Lieutenant Governor is constitutionally an officer of both legislative and executive departments"). The majority fails to cite a single authority in support of its finding that a city councilman is a position which functions within the executive branch of government. *But cf. Ball v. Fitzpatrick*, 602 So. 2d 873, 876 (Miss. 1992) (recognizing that a member of a city council is a member of legislative branch of government). With a stroke of the pen, and without the support of a single precedent or authority, the majority boldly moves an entire city council from the legislative branch of government to the executive branch of government. Inasmuch as that single act by this Court is the sole basis for the majority opinion, I am compelled to dissent.

      **WALLER, P.J., JOINS THIS OPINION.**